[Crim. No. 20298. First Dist., Div. Four. Oct. 2, 1980.]

In re RICHARD BELL et al., on Habeas Corpus.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and John T. Murphy, Deputy Attorneys General, for Appellant.

Michael Satris, under appointment by the Court of Appeal, and Donald Specter for Petitioners.

**OPINION**

**CHRISTIAN, J.**—G. W. Sumner, warden of the prison at San Quentin, appeals from an order for issuance of a writ of habeas corpus to prevent

prison officials from imposing particular limitations on the visiting privileges of inmates found to be in possession of contraband.

Inmate Richard Bell had been found in possession of a marijuana cigarette and inmate John Van Deutekom was found in possession of contraband currency. Prison authorities deprived both inmates of contact visits, i.e., visits without a physical barrier between the inmate and the visitor.

In petitioning for a writ of habeas corpus the inmates requested the trial court to "permanently enjoin the Warden from excluding prisoners charged with or found guilty of narcotics infractions unrelated to visiting from any type of contact visits to which they otherwise would be entitled...." The court granted this request, adjudging that "suspension will be allowed [only] in the event that the prison authorities have some evidence that the contraband was obtained during a contact visit."

It has been provided by statute that the civil rights of state prisoners include the right to have personal visits, subject to the power of the Department of Corrections to provide such restrictions as are "necessary for the reasonable security of the institution."[1] The language of the proviso in section 2601, subdivision (d), has received little analysis in the reported decisions. The Attorney General argues that the phrase "necessary for the reasonable security of the institution" connotes a standard of reasonableness; the inmates argue that it proscribes restrictions if the legitimate security interests of the institution can be furthered by less restrictive means. The latter approach appears to have guided the court in the most recent decision on point, *In re French* (1980) 106 Cal.App. 3d 74 [164 Cal.Rptr. 800], in which the court upheld an injunction precluding San Quentin prison authorities from indefinitely excluding visitors on the basis of their one-time refusals to submit to unclothed body searches. The opinion implied that the procedure was "unnecessarily restrictive" (106 Cal.App.3d at p. 83) because to require strip searching of a visitor on every visit after a one-time refusal would as effectively deter smuggling of contraband into the institution. (106 Cal.App.3d at pp. 85-86.)

---

[1]Penal Code section 2601, in pertinent part: "Notwithstanding any other provision of law, each such person shall have the following civil rights:...(d) To have personal visits; provided that the department may provide such restrictions as are necessary for the reasonable security of the institution."

A similar statutory phrase was central to a recent decision of the Supreme Court upholding a ban on meetings of the Prisoners Union at Soledad Prison. (*In re Price* (1979) 25 Cal.3d 448 [158 Cal.Rptr. 873, 600 P.2d 1330].) The applicable statute was Penal Code section 2600,[2] which provides that the civil rights of prisoners may be restricted only to the extent "necessary in order to provide for the reasonable security of the institution...." In applying this standard the court said, "we must determine whether the instant regulation is reasonable [citations] or, conversely, whether the prison administration is unreasonable in its concern that prisoners' union meetings and activities are a potential threat to the security of penal institutions." (*Id.*, at p. 453.)

The Attorney General argues that the court in *Price* construed the pertinent language of section 2600, which closely resembles that in section 2601, subdivision (d), as imposing a test of reasonableness. The *Price* court analyzed only the reasonableness of the prison authorities' concern that the proposed union activity could threaten the security of the institution, and not the concomitant question whether the challenged restriction was a "necessary" response to this concern. (*Id.*, at pp. 453-455.) The court apparently took the view that once the reasonableness of the authorities' concern for institutional security was established, the necessity for a total ban on union meetings was self-evident. (See *In re French, supra*, 106 Cal.App.3d at p. 83.) Consequently, *Price* does not provide authoritative guidance for determining whether the validity of a restriction depends on a showing that it is a "necessary" response to a reasonably perceived threat to institutional security.

Here the reasonableness of the warden's belief that institutional security is affected by the smuggling of contraband is self-evident: "It is a fact sufficiently well known to warrant judicial notice that contraband is smuggled into custodial institutions." (*Mathis* v. *Appellate Department* (1972) 28 Cal.App.3d 1038, 1041 [105 Cal.Rptr. 126].) It is the *necessity* of the particular response adopted by the warden that is at issue. The term "necessary" used in the statutory proviso allowing restrictions on the right to personal visits is to be construed according to its common meaning. (2A Sands, Statutes and Statutory Construction (4th

---

[2]Penal Code section 2600: "A person sentenced to imprisonment in a state prison may, during any such period of confinement, be deprived of such rights, and only such rights, as is necessary in order to provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public."

ed. 1973) § 47.28, at pp. 141-142.) A restriction on the right to personal visits is not necessary if the goal which it is intended to promote can effectively be promoted by less restrictive means. The "less restrictive means" test employed by the trial court appears to us to reflect accurately the legislative intent. If there is some less restrictive and equally effective means, other than the procedures challenged here, to promote the goal of preventing smuggling of contraband into San Quentin prison, the challenged procedures are not necessary to the security of the institution and are proscribed by Penal Code section 2601, subdivision (d).

Respondents argued before the trial court that there are less restrictive measures available to appellant, other than suspension of contact visits for a prisoner found to be in possession of contraband, to protect against the risk of further contraband being smuggled into prison during visits. They presented two examples: (1) searching of visitors if prison authorities have substantial reason to believe they are attempting to smuggle contraband (see Cal. Admin. Code, tit. 15, § 3173, subd. (e)), and (2) imposition of available punitive measures where a prisoner is found guilty of possession of narcotics-related contraband. Respondents presented no evidence in support of their contentions.

Appellant resisted the writ petition by submitting a declaration, attached to his return to the order to show cause, stating that "suspending contact visits in individual cases is the least restrictive control of which I am aware." The statement was terse and conclusory, but it was the only evidence submitted to the court. Where that evidence was not challenged, it would have supported an order upholding the regulation. (See *Waller v. Waller* (1970) 3 Cal.App.3d 456, 465 [83 Cal.Rptr. 533].)

The court's "memorandum and minute order," however, indicates that the court held the challenged procedures invalid on the basis that institutional security could be promoted by the less restrictive means of suspending contact visits only "in the event that the prison authorities have some evidence that the contraband was obtained during a contact visit." But there was no evidence supporting that conclusion. On the contrary, the warden's declaration stated: "Discovery of such contraband upon prisoners rarely uncovers its source. Inmates do not reveal the sources of their supplies for fear of cutting off the sources or of retaliation if they inform." Thus the reason for the court's decision indicated in its memorandum and minute order was not a sound basis

for invalidation of the challenged procedures. Where there was no evidence contradicting the declaration of the warden that no less restrictive method was available to control the smuggling of contraband, the judgment cannot be sustained.

Reversed.

Caldecott, P. J., and Kroninger, J.,* concurred.

A petition for a rehearing was denied October 30, 1980, and petitioners' application for a hearing by the Supreme Court was denied November 26, 1980. Bird, C. J., was of the opinion that the application should be granted.

---

*Assigned by the Chairperson of the Judicial Council.