[No. AO22431. First Dist., Div. Three. June 3, 1983.]

GEORGE DEUKMEJIAN, as Governor, etc., Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
DON C. WILSON et al., Real Parties in Interest.

COUNSEL

John K. Van de Kamp, Attorney General, Kenneth C. Young and Paul Gifford, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Michael Satris, Luther Kent Orton, Denis R. Salmon, David D. Cooke, Kathleen P. Foster and Brobeck, Phleger & Harrison for Real Parties in Interest.

OPINION

WHITE, P. J.—■ This petition, filed by the Governor of the State of California, challenges a trial court ruling requiring him to testify in a lawsuit concerning conditions at San Quentin State Prison. The Governor is a defendant in that action and has been given notice to appear to testify at a trial now in progress.[1] His motion to quash the notice to appear was denied by the trial court. We conclude that the trial court erred in failing to quash the notice to appear because plaintiffs in the lawsuit (real parties in interest here) made an insufficient showing of need for the Governor's testimony. We grant a peremptory writ of mandate directing the trial court to quash the notice to appear.

We start our review by noting that real parties in interest and the trial court accepted the principle stated in *State Board of Pharmacy* v. *Superior Court* (1978) 78 Cal.App.3d 641, 644-645 [144 Cal.Rptr. 320], that a busy public official should not be required to give evidence in his or her official capacity in the absence of "compelling reasons." Real parties in interest presented what they considered "compelling reasons," and the trial court concluded that the Governor's testimony was "essential." The dispute here is over the adequacy of the reasons given.

---

[1]Code of Civil Procedure section 1987, subdivision (b), provides that testimony of a party to a lawsuit may be obtained by serving notice upon the party's attorney, in lieu of a subpoena.

We are at a slight disadvantage in reviewing the trial court order because the parties have not fully described the underlying lawsuit. However, petitioner has supplied us with real parties' opposition to the motion for a protective order or to quash the notice to appear and with a transcript of the trial court hearing on the motion. Scrutiny of those documents reveals the court's mistaken view of the role of the Governor in this lawsuit.

The lawsuit apparently seeks in some way to alleviate overcrowding and other harmful conditions at San Quentin State Prison. The defendants are Governor Deukmejian and several corrections officials. According to real parties, the evidence already presented at trial has shown that the prison policies endorsed by the Governor's administration have had a direct effect upon San Quentin conditions and that the Governor's failure to support "early release" legislation to alleviate overcrowding contributed to the measure's failure to obtain committee approval in the Legislature.

In their opposition to the Governor's motion below, real parties filed a declaration stating that they had reason to believe that Governor Deukmejian had personal knowledge "of what he has (without judicial coercion) done about the conditions of confinement at San Quentin and the problems in the California Department of Corrections and of what he intends to do about them. Plaintiffs base this belief on the following: (1) Mr. Deukmejian's term as a state legislator; (2) his years of service at the State Attorney General's office; (3) his public statement that he is 'very pleased our prisons are full' (*see,* San Francisco Chronicle article . . .); and (4) information supplied to counsel for plaintiffs that he opposed passage of early release legislation designed to alleviate prision [*sic*] overcrowding." Their argument to the trial court focused upon the Governor's knowledge of what he had done about conditions and what he intended to do. They described these as the "central issues" in the case and asserted that no lesser official could provide that crucial information.

In explaining her ruling, the trial judge stated that "the Governor's testimony is essential [because] he is in a unique position to effect [*sic*] and . . . to remedy or to assist in remedying [any unconstitutional] situation . . . and because the Governor did hold . . . a position . . . as Attorney General, it is my belief he is in a unique position to know the condition of the State's prisons and it is almost impossible to talk about San Quentin without talking about the policies of the Department of Corrections and the State of California because it has been quite clear so far that the classification system, for instance, is one which . . . contributes [ ] to the conditions at San Quentin."

Both the papers submitted by real parties and the trial court's comments reveal that Governor Deukmejian was required to testify not because he had unique knowledge of the conditions at San Quentin Prison but because administration policies are alleged to have contributed to the overcrowded and otherwise harmful conditions. This reason was partially cloaked in discussion

of the need to discover what the Governor planned to do about the situation. But even then the inquiry would focus upon executive policies, not upon prison conditions.

As we understand the lawsuit, the issues are (1) whether the conditions at San Quentin violate constitutional safeguards, (2) whether the court may and should act to remedy the conditions, and (3) what remedies should be ordered. The first is a mixed question of law and fact, law to be interpreted by the court and facts to be presented by persons with personal knowledge of the physical conditions at San Quentin Prison.[2] The latter two questions are questions of law to be decided by the court. If the court reaches the remedy question, the Governor's input might indeed be helpful, because he might suggest remedies he could voluntarily undertake. But the question is ultimately one of law not dependent upon testimony. If the Governor participated at the remedy stage he would make a settlement offer or a proposal to the court concerning remedy. The Governor cannot be *compelled* to participate in seeking a remedy under the guise of being called as a witness.

We note a disturbing undercurrent in the argument presented by real parties and accepted by the court. It is assumed that the court may call the Governor "on the carpet," or at least compel him to work in a committee-like atmosphere with the court in order to solve prison problems. We disapprove such a blurring of the lines separating judicial and executive authority.

We reach our conclusion after full briefing by the parties. The result is clear. Issuance of an alternative writ would only delay our decision until the trial is over. A peremptory writ in the first instance is proper. (Code Civ. Proc., § 1088; *San Diego Wholesale Credit Men's Assn.* v. *Superior Court* (1973) 35 Cal.App.3d 458 [110 Cal.Rptr. 657]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165].)

Let a peremptory writ of mandate issue directing the Marin County Superior Court to set aside its order refusing to quash the notice to appear and to enter a new order nullifying the effect of the notice that petitioner appear as a witness.

Scott, J., and Barry-Deal, J., concurred.

---

[2]There is no indication that as a legislator, Attorney General, or Governor petitioner has gained unique *personal knowledge* of the conditions existing in San Quentin.