[No. C034286. Third Dist. May 16, 2002.]

MARIA ALFARO et al., Plaintiffs and Appellants, v.
C. A. TERHUNE, as Director, etc., et al., Defendants and Appellants.

## COUNSEL

Kathryn K. Andrews, John R. Grele and Susan Ten Kwan, under appointments by the Court of Appeal; Morrison & Foerster, Matthew I. Kreeger, Frederick S. Chung and Melissa L. Basch for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Paul D. Gifford and Ronald A. Bass, Assistant Attorneys General, Allen R. Crown, Stan M. Helfman, David M. Verhey and Enid Camps, Deputy Attorneys General, for Defendants and Appellants.

## OPINION

**SCOTLAND, P. J.**—Eight women who have been sentenced to death in state criminal proceedings (hereafter plaintiffs) challenge the implementation of the DNA and Forensic Identification Data Base and Data Bank Act of 1998 (hereafter the Act). (Pen. Code, § 295 et seq.; further section references are to this code unless otherwise specified.) Among other things, the Act states that any person who is convicted of a specified crime must "provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand for law enforcement identification analysis." (§ 296, subd. (a)(1).) The Act further provides that the California Department of Justice shall (1) serve as a repository for those items, (2) perform a deoxyribonucleic acid (DNA) analysis and any other forensic identification

of them, and (3) "store, compile, correlate, compare, maintain, and use DNA and forensic identification profiles and records" (§ 295.1, subds. (a), (c)) for use as an "effective law enforcement tool" in the "expeditious detection and prosecution of individuals responsible for sex offenses and other violent crimes, the exclusion of suspects who are being investigated for these crimes, and the identification of missing and unidentified persons, particularly abducted children." (§ 295, subds. (b)(3), (c).) The defendants in this action are state officials charged with implementing the Act.

Plaintiffs claim that, as applied to prisoners under sentence of death, the Act violates the constitutional prohibition against unreasonable searches and seizures and violates their privacy rights because "one of the key purposes justifying the [Act]—the deterrence of future crimes—is inapplicable" to those prisoners. In the alternative, they assert that the Act cannot be implemented because defendants have not adopted adequate regulations in compliance with the Administrative Procedure Act.

The trial court rejected the constitutional challenge but concluded that defendants had failed to adopt administrative regulations sufficient to implement the Act. Consequently, the court issued a permanent injunction prohibiting defendants from implementing the Act as to plaintiffs.

Defendants appeal from the issuance of injunctive relief. Plaintiffs cross-appeal from the rejection of their constitutional challenge. For reasons that follow, we conclude the trial court correctly rejected plaintiffs' constitutional challenge but erred in enjoining implementation of the Act. As we will explain, the terms of the Act itself are sufficiently precise that those who are subject to it can reasonably understand what is required, and the agencies charged with its execution can reasonably understand what they must do. Because its terms are not vague and indefinite, the Act can be implemented without the need for administrative regulations. Accordingly, we shall reverse the judgment in part and remand the matter to the trial court with directions to enter judgment in favor of defendants.

## BACKGROUND

The state's DNA and Forensic Identification Data Base and Data Bank program had its genesis in former section 290.2, enacted in 1983. (Stats. 1983, ch. 700, § 1, pp. 2680-2681.) As originally enacted, that provision was relatively brief and was limited in application to certain sex offenders. By the time of the last operative version of former section 290.2, the provision had been expanded beyond sexual offenses to include persons convicted of murder or of various felony assaults or batteries. (Stats. 1996, ch. 917, § 2.)

It also had been amended to include a far more detailed methodology for the collection and use of samples and impressions. (*Ibid.*)

Prior to 1997, former section 290.2 applied to persons who were to be discharged, paroled, granted probation, or otherwise released from custody. (Stats. 1994, 1st Ex. Sess. 1993, ch. 42, § 1, p. 8735.) At that time, the statute did not apply to persons under a death sentence, since they were not to be released from custody. Effective January 1, 1997, the statute was amended to apply to persons convicted of enumerated offenses, including murder, regardless of release from custody. (Stats. 1996, ch. 917, § 2.) In light of this amendment, the Department of Corrections issued administrative bulletin 97/3, informing staff that inmates sentenced to death or to life without the possibility of parole were not exempt from former section 290.2, and directing staff to begin collecting blood specimens, saliva samples, and palm prints and fingerprints from those inmates.

In response, plaintiffs filed a complaint seeking declaratory and injunctive relief. They alleged that former section 290.2 was unconstitutional and that defendants' administrative bulletin had been issued without complying with the state Administrative Procedure Act (APA). (Gov. Code, § 11340 et seq.; see *id.* § 11370.)

Pending resolution of the merits of the litigation, the trial court issued a preliminary injunction, prohibiting defendants "from extracting and collecting samples of blood and saliva from the named plaintiffs herein, as well as all inmates confined as a result of a sentence of death (condemned inmates) within the California Department of Corrections, or imposing disciplinary action against any condemned inmates for refusal to consent to collection of body fluids."

While this lawsuit was pending, the Legislature repealed former section 290.2 and replaced it with the Act. In response, plaintiffs filed a third amended complaint to challenge the Act, alleging (1) the collection of body fluids for law enforcement purposes is an unreasonable search and seizure in violation of the constitutional rights of inmates under sentences of death who, under their current sentences, cannot expect to be released from prison; (2) administrative bulletin 97/3, relating to former section 290.2, was issued without compliance with the APA[1]; and (3) no valid administrative regulations have been promulgated regarding implementation of the Act.

---

[1]In their amended complaint, plaintiffs continue to complain of former section 290.2 and administrative bulletin 97/3. However, both the statute and the bulletin were superseded by enactment of the Act. And by virtue of the temporary restraining order and preliminary injunction issued by the trial court, plaintiffs were not subjected to the requirements of former

Defendants demurred to the third amended complaint, and the trial court sustained the demurrer without leave to amend as to the cause of action alleging the statutory scheme was unconstitutional. In doing so, the court construed the cause of action as a facial challenge to the statutory scheme, and concluded the scheme is facially valid. Plaintiffs moved for reconsideration asserting, among other things, that they also are making an as-applied challenge to the scheme. In this respect, they pointed out they are challenging the statutory scheme solely with respect to inmates under a sentence of death. The court denied reconsideration after concluding the challenge was facial despite the fact plaintiffs sought only partial invalidation.

The trial court subsequently denied defendants' motion for summary judgment on the remaining causes of action. In doing so, the court concluded the statutory scheme "cannot be implemented without fleshing out by means of regulation." The court also denied defendants' request to dissolve the preliminary injunction based upon the fact that former section 290.2 was replaced with the Act. The court said (1) the matter could go to trial on the pleadings and with judicial notice that there are no regulations, and (2) the court would issue a permanent injunction prohibiting defendants from implementing the Act as to plaintiffs without having adopted necessary regulations.

In response to the trial court's statements, the Department of Corrections drafted emergency regulations and submitted them to the Office of Administrative Law (OAL). The regulations were approved by the OAL on an emergency basis and have since become final. They are found in title 15, California Code of Regulations, sections 3025, 3315, subdivision (a)(3)(S), 3323, subdivision (g)(6), 3327, subdivision (a)(4), and 3901.19.2, subdivision (a)(8).

The matter came on for trial after the Department of Corrections had submitted the emergency regulations to the OAL, but before they were approved on an emergency basis. The court excluded the proposed regulations from evidence and orally announced a tentative decision to issue a permanent injunction. Thereafter, the regulations were approved by the OAL, and defendants moved to reopen. The court took judicial notice of the emergency regulations, said they are insufficient, and affirmed its tentative decision. The court then issued a final judgment and permanent injunction.

---

section 290.2 or administrative bulletin 97/3. Consequently, those provisions are no longer in issue.

.

## DISCUSSION

### I

■ Defendants' appeal begins with a procedural attack on the judgment. Characterizing it as a determination that defendants are obligated to adopt administrative regulations before enforcing the Act, they assert that the judgment in effect compels them to adopt such regulations. Thus, defendants argue, the trial court exceeded its jurisdiction by granting injunctive relief when the only remedy would be by writ of mandate.

The appropriate form of proceeding and the available remedies, if any, are dependent upon the particular claims of the plaintiffs and the nature of the relief they seek. (See *Silverman v. Greenberg* (1938) 12 Cal.2d 252, 254 [83 P.2d 293].) For example, a petition for a writ of mandate is appropriate to compel the performance of an official act required by law. (Code Civ. Proc., § 1085; *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442 [261 Cal.Rptr. 574, 777 P.2d 610].) Therefore, if the Act requires defendants to promulgate administrative regulations and if plaintiffs were seeking to compel them to do so, then a petition for writ of mandate would be an appropriate form of action.

However, plaintiffs are not seeking to compel defendants to promulgate administrative regulations; rather, they seek to preclude defendants from executing the provisions of the Act as to plaintiffs and other inmates under sentence of death. "An injunction is a writ or order requiring a person to refrain from a particular act." (Code Civ. Proc., § 525.) Hence, the relief plaintiffs seek is injunctive in character. The fact plaintiffs' claim for relief is based, in part, on a claim that the Act cannot be implemented without administrative regulations does not change the nature of the remedy they seek.

■ Of course, in pursuing a claim for injunctive relief, plaintiffs are bound by the procedural and substantive requirements applicable to an action for injunctive relief. These include Code of Civil Procedure section 526, subdivision (b)(4), which provides that an injunction cannot be granted "[t]o prevent the execution of a public statute by officers of the law for the public benefit." (See also Civ. Code, § 3423, subd. (d).)

According to defendants, the trial court ran afoul of this prohibition when it enjoined implementation of the Act. They argue (1) the court erred in enjoining execution of the statutory scheme based upon the court's mistaken view that the administrative regulations promulgated to implement the Act

were insufficient, (2) contrary to the court's conclusion, the Act does not require defendants to adopt regulations before implementing the Act, and (3) rejection of the emergency regulations promulgated in response to the court's statement of anticipated ruling was contrary to law and an abuse of discretion.

■ The rule against enjoining the execution of a public statute is subject to four judicially recognized exceptions: (1) where the statute is unconstitutional and there is a showing of irreparable injury; (2) where the statute is valid but is enforced in an unconstitutional manner; (3) where the statute is valid but, as construed, does not apply to the plaintiff; and (4) where the public official's action exceeds his or her authority. (6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 332, pp. 265-266.)

■ With respect to the first exception, the trial court found the Act to be constitutional. In part II of this opinion, we reject plaintiffs' challenge to that conclusion. As to the third exception, the Act is applicable to plaintiffs by its express and unambiguous terms. (§§ 296, subd. (a)(1)(B), 296.1, subd. (c).) Accordingly, the scope of our inquiry here is limited to the second and fourth exceptions, i.e., whether applying the Act to plaintiffs without implementing administrative regulations would be unconstitutional or would exceed the authority of defendants.

There are two potential bases upon which plaintiffs could make the required showing. The first would be a legislative intention, by express provision or by necessary implication, that the Act cannot be implemented in the absence of administrative regulations. The second would be a showing that the Act is too vague and indefinite to be implemented without administrative regulations.

Section 295, subdivision (e) of the Act provides in pertinent part: "The Department of Justice DNA Laboratory, the Department of Corrections, and the Department of the Youth Authority shall adopt policies and enact regulations for the implementation of this chapter, *as necessary*, to give effect to the intent and purpose of this chapter, and to ensure that data bank blood specimens, saliva samples, and thumb and palm print impressions are collected from qualifying offenders in a timely manner . . . ." (Italics added.)

The qualification that defendants shall enact regulations "as necessary" accomplishes two purposes. It grants to defendants the discretion to determine whether and when regulations are necessary. (See *Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1015 [9 Cal.Rptr.2d 358, 831

P.2d 798]; *Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 355 [185 Cal.Rptr. 453, 650 P.2d 328]; *Sklar v. Franchise Tax Board* (1986) 185 Cal.App.3d 616, 623 [230 Cal.Rptr. 42].) And it serves as a limitation on defendants' authority to enact regulations, i.e., they may do so only when necessary. (See *In re Arias* (1986) 42 Cal.3d 667, 691 [230 Cal.Rptr. 505, 725 P.2d 664], abrogation by statute on another point recognized in *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 130 [105 Cal.Rptr.2d 46, 18 P.3d 1198]; *In re Bell* (1980) 110 Cal.App.3d 818, 821-822 [168 Cal.Rptr. 100].)

From the statute's language, we cannot derive a legislative intention that regulations must be adopted regardless of whether defendants determine, in their administrative discretion, that regulations are unnecessary. And nothing elsewhere in the Act expresses, or necessarily implies, a legislative intention that implementation of the Act be delayed until the adoption of administrative regulations.

To the contrary, in section 300.3, the Legislature provided: "The duties and requirements of the Department of Corrections and the Department of the Youth Authority pursuant to this chapter shall commence on July 1, 1999." Moreover, in an uncodified portion of the measure, the Legislature stated: "Notwithstanding Section 17580 of the Government Code, unless otherwise specified, the provisions of this act shall become operative on the same date that the act takes effect pursuant to the California Constitution." (Stats. 1998, ch. 696, § 4.)[2] In light of these provisions, we find no legislative intent that the Act not be operative unless and until regulations are promulgated.

▮ Some statutory schemes, by their nature, cannot be implemented without administrative regulations. A law cannot be said to be self-executing if it fails to provide " ' " " 'a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced . . . .' " ' " (*People v. Vega-Hernandez* (1986) 179 Cal.App.3d 1084, 1092 [225 Cal.Rptr. 209], citations omitted.) For example, if the Legislature authorized an agency to make benefit payments to needy persons but left it to the agency to determine need, then the agency would be compelled to

---

[2]Government Code section 17580 has since been repealed. (Stats. 1998, ch. 876, § 6.) Before its repeal, the section provided: "No bill, except a bill containing an urgency clause, introduced or amended on or after January 1, 1989, that mandates a new program or higher level of service requiring reimbursement of local agencies or school districts pursuant to Section 6 of Article XIII B of the California Constitution shall become operative until the July 1 following the date on which the bill takes effect, unless the bill specifically makes this section inapplicable or contains an appropriation for the reimbursement or a specification that reimbursement be made pursuant to Section 17610." (Stats. 1988, ch. 1179, § 4, p. 3776.)

establish the standard of need by regulation; otherwise the statutory scheme could not be implemented in a consistent, nonarbitrary manner. Hence, we agree with plaintiffs that, in some cases, a court may enjoin implementation of a statutory scheme for want of administrative regulations.

Two lines of reasoning converge to dictate the conclusion that the scope of judicial authority is narrow in this respect. First, in the absence of an express legislative command, the decision whether administrative regulations are necessary or appropriate is a matter entrusted to the discretion of the administrative agency. (*Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 413 [128 Cal.Rptr. 183, 546 P.2d 687].) The agency's decision, which is legislative in character, comes to the court with a strong presumption of correctness, and the court must defer to the agency's expertise unless its decision is arbitrary and capricious. (*Moore v. California State Bd. of Accountancy, supra,* 2 Cal.4th at p. 1015; *Ford Dealers Assn. v. Department of Motor Vehicles, supra,* 32 Cal.3d at p. 355.) As stated in *Tailfeather v. Board of Supervisors* (1996) 48 Cal.App.4th 1223 [56 Cal.Rptr.2d 255], an agency decision not to institute rulemaking should be overturned only in the rarest and most compelling circumstances. (*Id.* at p. 1244.)[3]

Second, a determination that a statutory scheme cannot be implemented without administrative regulations is essentially a determination that the statutory scheme, standing alone, is too vague or indefinite to be enforced. To be enforceable, a law must be sufficiently precise as to give a person of ordinary intelligence a reasonable opportunity to know what is required and to provide a sufficient standard for enforcement so that arbitrary and discriminatory enforcement may be avoided. (*Bamboo Brothers v. Carpenter* (1982) 133 Cal.App.3d 116, 126 [183 Cal.Rptr. 748].) But reasonable certainty is all that is required. (*Rutherford v. State of California* (1987) 188 Cal.App.3d 1267, 1276 [233 Cal.Rptr. 781].) A statutory scheme is not required to isolate and specify, or provide detailed plans and specifications

---

[3]This conclusion is reinforced by express legislative declarations in the APA. In the years leading up to 1979, there was an unprecedented growth in the number of administrative regulations promulgated by state agencies. (Gov. Code, § 11340, subd. (a).) The Legislature was concerned that substantial time and public funds were spent in adopting unnecessary regulations. (Gov. Code, § 11340, subd. (c).) Therefore, among other things, the Legislature established the OAL in 1979, and charged it with review of adopted regulations for the purpose of reducing the number of administrative regulations and improving the quality of those regulations which are adopted. (Gov. Code, § 11340.1, subd. (a).) The Legislature also stated that no regulation is valid or effective "unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11342.2.) Since the Legislature expressly conferred upon administrative agencies the discretion to determine necessity, subject to review by the OAL, it follows that the scope of judicial authority to require rulemaking is necessarily deferential and narrow.

concerning, every precise activity or conduct that is intended to be required or prohibited. (*Sunset Amusement Co. v. Board of Police Commissioners* (1972) 7 Cal.3d 64, 73 [101 Cal.Rptr. 768, 496 P.2d 840].) And an administrative agency properly can choose to resolve some aspects of the implementation of a statutory scheme through ad hoc adjudication rather than by general rule. (*Agricultural Labor Relations Bd. v. Superior Court, supra,* 16 Cal.3d at p. 413.) A statutory scheme may not be held to be unenforceably vague unless such vagueness "clearly, positively and unmistakably appears." (*Rutherford v. State of California, supra,* 188 Cal.App.3d at p. 1276.)

 Regardless of the line of reasoning we follow, the result is the same; the judicial role is an extremely narrow one. Whether we reach that result as a matter of required judicial deference to the quasi-legislative discretion of administrative agencies or by application of the rules applicable to determining when a statutory scheme is too vague or indefinite to be enforced, we conclude that the implementation of a statutory scheme can be enjoined for want of administrative regulations only in clear and compelling circumstances.

The trial court did not indicate the specific respects in which it found that the Act required administrative regulations for its implementation. The court simply indicated that the Act needed "fleshing out" by means of regulation. But the appropriate test is not whether regulations would be useful or appropriate. The test is whether, giving due deference to the discretion of the agencies charged with implementing the Act, it can be said that the Act is too vague and indefinite to be implemented without administrative regulations.

When we apply this standard to the Act, we conclude that the trial court erred in enjoining its implementation. The Act is lengthy and comprehensive. It is detailed and specific. It is mandatory and leaves little discretion in the agencies charged with its execution. The Act precisely defines its purposes. (§ 295.) It precisely defines the purposes for which DNA and other forensic analyses may be performed. (§ 295.1.) It precisely defines who is subject to its requirements. (§§ 296, 296.1.) It defines the specimens, samples, and print impressions that must be given, when they must be given, and how they are to be taken. (§§ 296-296.2, 298.) It defines the persons who are authorized to analyze the specimens and samples. (§ 297.) It provides for the delivery and storage of the specimens and samples and profiles and other information developed therefrom, and defines when they must be expunged. (§§ 298, 299.) It establishes the uses to which the information obtained may and may not be put. (§§ 295, subd. (c), 299.5, 299.6.) It establishes the entities to whom and the purposes for which

disclosure may be made. (§§ 299.5-299.7.) And, it provides penalties for violations of its terms. (§ 299.5.)

Simply stated, the terms of the Act itself are sufficiently precise that those who are subject to it can reasonably understand what is required, and the agencies charged with its execution can reasonably understand what they must do. Because its terms are not vague and indefinite, the Act can be implemented without the need for administrative regulations. Hence, the trial court erred when it enjoined the implementation of the Act on the ground that it could not be executed without the promulgation of adequate regulations.[4]

II

We turn now to plaintiffs' cross-appeal challenging the trial court's determination that the Act is constitutional.

DNA data base and data bank acts have been enacted in all 50 states as well as by the federal government. (See 42 U.S.C. §§ 14131-14134; and see Annot., Validity, Construction, and Operation of State DNA Database Statutes (2000) 76 A.L.R.5th 239, 252.) Various constitutional challenges to these acts have been rejected consistently. (See, e.g., *Roe v. Marcotte* (2d Cir. 1999) 193 F.3d 72 [Connecticut]; *Schlicher v. (NFN) Peters, I & I* (10th Cir. 1996) 103 F.3d 940 [Kansas]; *Boling v. Romer* (10th Cir. 1996) 101 F.3d 1336 [Colorado]; *Rise v. State of Oregon* (9th Cir. 1995) 59 F.3d 1556 [] [Oregon]; *Jones v. Murray* (4th Cir. 1992) 962 F.2d 302 [Virginia].) A challenge to former section 290.2, the predecessor of the Act, was rejected in this state by *People v. King* (2000) 82 Cal.App.4th 1363 [99 Cal.Rptr.2d 220]. The various decisional authorities addressing and rejecting constitutional challenges to state DNA data base and data bank acts are collected in the Annotation, Validity, Construction, and Operation of State DNA Database Statutes, *supra*, 76 A.L.R.5th 239.

In view of the thoroughness with which constitutional challenges to DNA data base and data bank acts have been discussed, there is little we would venture to add. We agree with existing authorities that (1) nonconsensual extraction of biological samples for identification purposes does implicate constitutional interests; (2) those convicted of serious crimes have a diminished expectation of privacy and the intrusions authorized by the Act are

---

[4]In view of our determination that the Act as written is not too vague and indefinite to be enforceable, we need not address defendants' contentions concerning the effect of the emergency regulations promulgated by the Department of Corrections in an effort to satisfy the trial court.

minimal; and (3) the Act serves compelling governmental interests. Not the least of the governmental interests served by the Act is "the overwhelming public interest in prosecuting crimes *accurately*." (*Rise v. State of Oregon, supra*, 59 F.3d at p. 1561, original italics.) A minimally intrusive methodology that can serve to avoid erroneous convictions and to bring to light and rectify erroneous convictions that have occurred manifestly serves a compelling public interest. We agree with the decisional authorities that have gone before and conclude that the balance must be struck in favor of the validity of the Act.

Plaintiffs do not argue that we should entirely reject the plethora of decisional authorities which have upheld DNA data base and data bank acts. And they do not assert that we should find the Act unconstitutional per se. Rather, plaintiffs argue that they are challenging the Act solely as applied to prisoners under sentence of death and that the trial court erred in resolving plaintiffs' challenge at the demurrer stage of the litigation. We will address their assertions seriatim.

Plaintiffs note that some of the decisional authorities upholding DNA data base and data bank acts have mentioned the penal interests the acts may serve, such as deterring and preventing future criminality. (*Roe v. Marcotte, supra*, 193 F.3d at p. 79; *Rise v. State of Oregon, supra*, 59 F.3d at p. 1561; *People v. King, supra*, 82 Cal.App.4th at p. 1376.) They argue that, as persons sentenced to death, they can never expect to be released from prison and that, with respect to them, the sole purpose of the Act is for normal law enforcement purposes, i.e., solving crimes. This, according to the argument, serves to distinguish prior authorities that have upheld DNA acts. We reject the attempted distinction.

First, while decisional authorities have mentioned deterrence and prevention of future criminality as purposes served by DNA testing, they specifically have upheld DNA acts for the law enforcement purpose of solving crimes. (*Rise v. State of Oregon, supra*, 59 F.3d at p. 1561; *Jones v. Murray, supra*, 962 F.2d at p. 306; *People v. King, supra*, 82 Cal.App.4th at p. 1376.) Hence, these authorities do not provide a reasoned basis for excluding inmates sentenced to death from their reach.

Second, plaintiffs' argument is based upon the false premise that a person confined pursuant to a sentence of death is thereby incapable of future criminality. For example, a death sentence and/or special circumstance finding can be overturned on appeal or through state or federal habeas corpus proceedings, and the Governor can commute a sentence. (Cal. Const., art. V, § 8, subd. (a).) There also is the possibility of escape. (§ 4530.) And,

significantly, in-prison offenses by inmates are hardly rare. (§ 4500 et seq.) In particular, the ability to identify the source of a bodily fluid or other bodily substance could serve to deter the crime of "gassing," in which an inmate places or throws bodily fluids or other bodily substances onto the person of a correctional officer. (§ 4501.1.)[5]

When the Legislature decided to enact a DNA data base and data bank act, it was entitled to use legislative judgment in determining who should and who should not be subject to the Act. (*People v. Sanchez* (1997) 52 Cal.App.4th 997, 1002 [60 Cal.Rptr.2d 880]; *Leavenworth Properties v. City and County of San Francisco* (1987) 189 Cal.App.3d 986, 992-993 [234 Cal.Rptr. 598].) It was not required to assume that inmates under a sentence of death are incapable of committing crime. (See § 26 [defining persons incapable of crime].)

Plaintiffs assert that existing authorities were concerned with the extraction of biological specimens and samples, while plaintiffs are challenging genetic testing of specimens and samples. They argue that genetic testing is a search separate and apart from the extraction of specimens and samples. (See *Norman-Bloodsaw v. Lawrence Berkeley Laboratory* (9th Cir. 1998) 135 F.3d 1260, 1269.)

We cannot agree that this argument serves to distinguish plaintiffs' challenge to the Act from existing authorities that have upheld the constitutionality of DNA acts. The uses to which specimens and samples are to be put are inextricably bound up with the determination whether specimens and samples may be obtained. The cases are uniform in concluding that the extraction and DNA testing of specimens and samples is an intrusion subject to constitutional analysis. The extent of the intrusion is measured by reference to express limitations on the uses to which the specimens and samples may be put, and the governmental interests are assessed with respect to those specific uses. (See *Rise v. State of Oregon, supra,* 59 F.3d at p. 1561; *People v. King, supra,* 82 Cal.App.4th at p. 1377.) No court has held that the government can extract and analyze specimens and samples without reference to the specific uses, and limitations thereon, to which the specimens and samples may be put.

Plaintiffs complain that DNA testing has the potential to reveal sensitive personal and biological information. However, the Act specifically limits to identification purposes the DNA and other forensic identification analyses

---

[5]Gassing is a sufficiently serious problem in the state prison that the Legislature found it appropriate to deal with the problem by specific statutory provision rather than through more general provisions proscribing assault and battery. (§ 4501.1.)

authorized by the Act. (§ 295.1.) Defendants are authorized to analyze specimens and samples "in order to establish identity and origin of samples for identification purposes." (§ 297, subd. (a).) The Act exempts all DNA and forensic identification profiles and other identification information from any law requiring disclosure of information to the public, and it makes such information confidential. (§ 299.5, subds. (a), (b).)[6] As was the case in *Rise v. State of Oregon, supra,* 59 F.3d at page 1561, the Act appropriately limits the state's use of the specimens, samples, and print impressions that it requires.

Plaintiffs assert that "identification purposes" is broad and vague enough to encompass almost any conceivable use of DNA information. We disagree. Within the context of the Act, this means the comparison of DNA and forensic identification profiles "in order to establish identity and origin of samples for identification purposes." (§ 297, subd. (a).) Moreover, one of the legislative purposes of the Act is to enable the state to participate in the FBI's Combined DNA Index System (CODIS); the Department of Justice is required to act as liaison with the FBI for that purpose, and the provisions with respect to analyses of specimens and samples are designed for that purpose. (§§ 295, subd. (d), 297, subd. (c).) Obviously, uniformity of approach is vital to establishment and use of a data base or data bank. (See 42 U.S.C. § 14132.) And state access to the federal index may be cancelled for failure to meet the quality control and privacy requirements of federal law. (42 U.S.C. § 14132(c).) The Act does not permit defendants to do more than standard and usual scientifically appropriate identification analyses with specimens, samples, and print impressions.

Plaintiffs argue that existing state and federal authorities are not dispositive because plaintiffs are basing their challenge on our state constitutional right to privacy as well as federal constitutional principles. California's Constitution includes an express right to privacy (Cal. Const. art. I, § 1), which in many contexts is broader and more protective of privacy than the right to privacy implied in the federal Constitution.

---

[6]Moreover, nothing in the Act exempts defendants from the restrictive provisions of the Information Practices Act of 1977. (Civ. Code, § 1798 et seq.) Among other things, that act requires a public agency to limit the collection and retention of personal information to that necessary to accomplish the agency's specific purpose, and restricts disclosure of such information. (Civ. Code, §§ 1798.14, 1798.24; see *Perkey v. Department of Motor Vehicles* (1986) 42 Cal.3d 185, 192-193 [228 Cal.Rptr. 169, 721 P.2d 50].) These provisions are relevant in determining the extent of an intrusion upon privacy interests and in balancing the intrusion against the public interests to be served. (*Perkey v. Department of Motor Vehicles, supra,* 42 Cal.3d at pp. 192-194.)

(*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 325-326 [66 Cal.Rptr.2d 210, 940 P.2d 797].)

The evaluation of privacy claims under our state Constitution requires (1) the identification of a specific, legally protected privacy interest, (2) a determination whether there is a reasonable expectation of privacy in the circumstances, (3) an assessment of the extent and gravity of the alleged invasion of privacy, and (4) a balancing of the invasion against legitimate and competing interests. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35-39 [26 Cal.Rptr.2d 834, 865 P.2d 633].) The key element in this process is the weighing and balancing of the justification for the conduct in question against the intrusion on privacy resulting from the conduct whenever a genuine, nontrivial invasion of privacy is shown. (*Loder v. City of Glendale* (1997) 14 Cal.4th 846, 893 [59 Cal.Rptr.2d 696, 927 P.2d 1200].)

██ In this instance, the balancing process required by our state constitutional right of privacy is precisely the same process that other jurisdictions have applied in upholding the validity of DNA data base and data bank acts. (See, e.g., *Roe v. Marcotte, supra,* 193 F.3d 72; *Schlicher v. (NFN) Peters, I & I, supra,* 103 F.3d 940; *Boling v. Romer, supra,* 101 F.3d 1336; *Rise v. State of Oregon, supra,* 59 F.3d 1556; *Jones v. Murray, supra,* 962 F.2d 302.) Although California courts applying state constitutional principles are not required to reach the same conclusion as courts of other jurisdictions, in this instance we agree with the trial court that the balancing process does not support a result contrary to the results reached in every other jurisdiction to have considered the matter. In this respect, we note that the balancing test was applied in *People v. King, supra,* 82 Cal.App.4th at pages 1377 and 1378, a California Court of Appeal decision upholding former section 290.2.

Plaintiffs contend the trial court erred in resolving the issue on demurrer because they are making an as-applied, rather than facial, challenge to the Act. We disagree. It is true that plaintiffs are limiting their challenge to the application of the Act to inmates under a sentence of death. But inmates under a sentence of death are expressly included within the Act. (§§ 296, subd. (a)(1)(B), 296.1, subd. (c).) And plaintiffs are contending that the Act, as written, can never be applied to inmates under sentence of death. Although the argument is, in part, based upon a claim that the Act is overinclusive, the challenge is to the language of the statutory scheme itself, and thus is a challenge to the law on its face. (*Dillon v. Municipal Court* (1971) 4 Cal.3d 860, 864-865 [94 Cal.Rptr. 777, 484 P.2d 945].)

In the final analysis, the propriety of resolving a constitutional claim on demurrer does not depend upon whether a challenge is styled facial or

as-applied; rather, it depends upon whether the complaint sets forth a claim that can be resolved as a question of law. (Code Civ. Proc., § 589, subd. (a); *Adams v. Superior Court* (1964) 226 Cal.App.2d 365, 367 [38 Cal.Rptr. 164]; *Ferraris v. Levy* (1963) 223 Cal.App.2d 408, 412 [36 Cal.Rptr. 30].) Regardless of how plaintiffs phrase their claim, their complaint boils down to a contention that the Act is unconstitutional as written. They have not alleged specific facts to show that a facially valid enactment is being, or has been, applied in a constitutionally impermissible manner. (See *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084-1085 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) Under the circumstances, the trial court did not err in resolving the claim as a question of law.

In their third amended complaint and in their proposed fourth amended complaint, plaintiffs identified a number of questions into which they wished to inquire. They assert that the resolution of the case through demurrer improperly blocked their investigation into these issues. However, a court is not an investigative agency. The judicial function is to resolve actual cases and controversies between the parties before the court. (*Marin Water etc. Co. v. Railroad Com.* (1916) 171 Cal. 706, 712 [154 P. 864]; *Los Angeles v. South Gate* (1930) 108 Cal.App. 398, 401.) Where, as here, the plaintiffs do not allege specific facts to demonstrate that a statutory scheme is being applied in an unconstitutional manner and allege only that they wish to use the court's processes to investigate whether, in some future instance, it might be, then the court does not err in treating the challenge as facial and resolving it upon demurrer.

Two further points warrant mention. First, we deal here with the right of privacy. Our state constitutional right of privacy applies to private action as well as governmental action. (*American Academy of Pediatrics v. Lungren, supra,* 16 Cal.4th at p. 326.) However, in this instance, we are concerned with a statutory enactment by our Legislature. When a statutory scheme is challenged under the right to privacy, courts must accord due deference to the primacy of the legislative branch as the maker of laws. (*Loder v. Municipal Court* (1976) 17 Cal.3d 859, 876 [132 Cal.Rptr. 464, 553 P.2d 624].) Plaintiffs' complaint presupposes that a court has the authority to hear and determine, as a question of fact, the validity of the legislative determinations that support the enactment. But courts do not have such authority.

"It is not the judiciary's function . . . to reweigh the 'legislative facts' underlying a legislative enactment." (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 372 [204 Cal.Rptr. 671, 683 P.2d

670, 41 A.L.R.4th 233].) The scope of judicial review must be cognizant that the factual determinations necessary to the performance of the legislative function are of a peculiarly legislative character. (See *Dawson v. Town of Los Altos Hills* (1976) 16 Cal.3d 676, 685 [129 Cal.Rptr. 97, 547 P.2d 1377].) Accordingly, "[i]f the validity of a statute depends on the existence of a certain state of facts, it will be presumed that the Legislature has investigated and ascertained the existence of that state of facts before passing the law." (*City of Ojai v. Chaffee* (1943) 60 Cal.App.2d 54, 61 [140 P.2d 116].) The presumption of constitutionality that must be accorded legislative acts requires that a legislative act "be deemed to have been enacted on the basis of any state of facts supporting it that reasonably can be conceived." (*Higgins v. City of Santa Monica* (1964) 62 Cal.2d 24, 30 [41 Cal.Rptr. 9, 396 P.2d 41].)

"What all this means is that the courts will not, as suggested by plaintiff[s], engage in a trial at which the court, as trier of fact, determines the factual basis upon which the Legislature may act." (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1219 [70 Cal.Rptr.2d 745].) "In other words, in enacting legislation the Legislature has already, in the exercise of the legislative power, determined the facts necessary to support the legislation. The courts cannot revisit the issue as a question of fact, but must defer to the Legislature's determination unless it is palpably arbitrary. . . . Consequently, we must uphold the challenged legislation so long as the Legislature could rationally have determined a set of facts that support it. . . ." (*Id.* at p. 1220, citations omitted.)

Although plaintiffs style their challenge to the law as an as-applied challenge, their third amended complaint and their proposed fourth amended complaint make clear that they simply want the court to redetermine, as a question of fact, the legislative determinations that supported inclusion of persons sentenced to death within the coverage of the Act. Such a claim does not raise an issue of fact to be tried and resolved by the court, and the trial court did not err in resolving the question as one of law.

Second, as previously noted, in the third amended complaint and proposed fourth amended complaint, plaintiffs set forth a number of matters into which they wished to inquire. To the extent these matters do not constitute a suggestion that the court should redetermine, as a factual issue, the legislative determinations that support the inclusion of inmates under a death sentence within the Act, they constitute a demand that defendants provide

assurances the law will be obeyed.[7]　　But courts do not have a right of general supervision over the executive branch and cannot demand assurances from the executive branch that a law will be obeyed on pain of being enjoined from implementing an otherwise valid enactment. (See *Donaldson v. Lungren* (1992) 2 Cal.App.4th 1614, 1623 [4 Cal.Rptr.2d 59]; *Deukmejian v. Superior Court* (1983) 143 Cal.App.3d 632, 635 [191 Cal.Rptr. 905].) In appropriate circumstances, a court will review acts that have been performed pursuant to statutory authority. (*McCarthy v. Superior Court* (1987) 191 Cal.App.3d 1023, 1031-1032 [236 Cal.Rptr. 833].) And a court may enjoin impermissible applications of a statute where it appears that such application is occurring or has occurred in the past. (*Tobe v. City of Santa Ana, supra*, 9 Cal.4th at p. 1084.) However, a court will not enjoin implementation of a statute merely because some impermissible application of the statute can be hypothesized. (*Ibid.*)

　When plaintiffs' pleadings are viewed in the appropriate light, the nature of their cause of action boils down to (1) a claim that including inmates under a sentence of death within the Act is unconstitutional on its face; (2) a request that the trial court redetermine, as a question of fact, the legislative determinations which supported including inmates under a sentence of death within the Act; (3) a demand that defendants provide assurances the Act will not be applied in an unconstitutional manner; and (4) a request to use the litigation to investigate the possibility that the Act will, at some future time, be applied in an unconstitutional manner.

Other than the claim that including inmates under a sentence of death within the Act is unconstitutional on its face, which can be resolved as a question of law, the pleadings do not state a claim upon which relief can be granted.

Having rejected plaintiffs' claim that including inmates under sentence of death in the Act is unconstitutional on its face, we find no error in the trial court's determination to sustain defendants' demurrer.

### DISPOSITION

The judgment is affirmed insofar as it rejects plaintiffs' constitutional challenge to the Act. The judgment is reversed insofar as it permanently

---

[7]For example, among the inquiries plaintiffs wish to make are "what are the means by which defendants will ensure that the DNA and other genetic information obtained by testing will not be used for improper or unconstitutional purposes?" and "what procedures are necessary to ensure that each test that defendants seek to perform on a sample is for a lawful and constitutional purpose?"

enjoins defendants from implementing the Act. The matter is remanded to the trial court with directions to enter judgment in favor of defendants. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 26(a).)

Davis, J., and Raye, J., concurred.

A petition for a rehearing was denied June 12, 2002, and the petition of plaintiffs and appellants for review by the Supreme Court was denied August 21, 2002.