Filed 7/19/23; Certified for Publication 8/16/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CHRISTOPHER ANDERSON et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> COUNTY OF SANTA BARBARA et al., <br><br> Defendants and Appellants. | 2d Civil No. B322465 <br> (Super. Ct. No. 22CV01299) <br> (Santa Barbara County) |

The Superior Court may not enjoin a public officer, here the county Road Commissioner, from enforcing the law. The injunction at issue here allows adjacent landowners to encroach upon a public right-of-way, a misdemeanor offense. Any claimed "failure" to follow the California Environmental Quality Act (CEQA) (Pub. Res. Code, § 2100 et seq.) [1] is not a defense to the

---

[1] All statutory references are to the Public Resources Code unless otherwise stated.

commission of a crime.  We will reverse the Superior Court's grant of a preliminary injunction.

The County of Santa Barbara (County) appeals from the entry of a preliminary injunction prohibiting its Road Commissioner from removing unpermitted encroachments placed in the public right of way along a portion of East Mountain Drive in Montecito.  East Mountain Drive leads to the trailhead of a popular hiking trail in Hot Springs Canyon.  The encroachments, which include landscaping, boulders and at least one unpermitted "No Parking" sign, block what would otherwise be public parking spaces.  Respondents contend the County violated the CEQA by ordering the encroachments' removal without considering the environmental impact of increased public parking in their neighborhood.  The trial court agreed and issued a preliminary injunction prohibiting removal of the encroachments pending a trial on the merits of the CEQA claims.

While this appeal was pending, the County filed a cross complaint alleging causes of action for public nuisance and trespass against respondents.  The parties also filed briefs in the trial court addressing the merits of respondents' petition for writ of mandate.  After entertaining oral argument on the writ petition, the trial court issued a statement of decision granting the petition and stating that it would issue a "peremptory writ of mandate . . . compelling [the] County to comply with its CEQA obligations with respect to its trailhead parking creation project." The statement of decision further explained that, "[T]he peremptory writ to be issued by the Court will also suspend all efforts by County to enforce the right-of-way encroachments (acting to effectively extend the existing preliminary injunction)

2

until this Court has determined, by way of a Return provided by the County, that County has complied with CEQA."

We conclude the trial court erred because respondents are not correct on the merits of their CEQA claim and will not be irreparably harmed by removal of encroachments installed without permits in the public right of way of an existing road. The County Road Commissioner is authorized by statute and local ordinance to remove any encroachment on a public right of way. (Sts. & Hy. Code, § 1481.) CEQA is not "a limitation or restriction on the power or authority of any public agency in the enforcement or administration of any provision of law which it is specifically permitted or required to enforce . . . ." (Pub. Resources Code, § 21174.) Respondents will suffer no irreparable harm because "a party suffers no grave or irreparable harm by being prohibited from violating the law . . . ." (*People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 306 (*Uber Technologies*).)

*Facts*

East Mountain Drive winds through the enclave of Montecito and leads to the trailhead of the Hot Springs Trail, a very popular hiking trail open to the general public. There are a handful of parking spaces near the trailhead. Members of the public may also legally park on some public roads in the area. In the spring of 2021, the County removed about 50 parking spaces along Riven Rock Road near the trailhead after the fire department raised concerns about fire risks and access for emergency vehicles. East Mountain Drive remains available for public parking.

Some property owners have installed landscaping, boulders, smaller rocks, trees, bushes and signs in the public

3

right of way along East Mountain Drive, to discourage or prevent members of the public from parking in front of their properties. These encroachments, and related parking problems, were reported to the traffic engineer for Santa Barbara County's Public Works Department (Department). The County began efforts to restore public parking on East Mountain Drive.

In September 2021, the Board of Supervisors appropriated $100,000 for Hot Springs Trailhead access improvement studies and implementation. The agenda letter supporting that decision explained that the Department sought funding to study and "plan improvements to trailhead access within the public road rights-of-way adjacent to the Hot Springs Trailhead." The Department identified an "urgent need" to "address the imbalance" between demand for parking and the spaces available at the trailhead given that the popularity of the trail had "skyrocketed" during the pandemic and "dozens" of parking spaces were removed from Riven Rock Road as a fire safety measure. Funding would "provide for studies and initial implementation of parking improvements" near the trailhead. The public right-of-way on East Mountain Drive "is currently unusable for parking due to private encroachments . . . ." Funding would be used to define and stake the right of way and "document the obstacles to creating public parking." The Department would then work with the Parks Department and adjacent owners to "create public parking while minimizing the impacts to their property frontage."

Members of the public continued to park on the street, despite the encroachments. Because the encroachments occupy much of the public right of way, people park in a way that partially obstructs the travel lane. This effectively converts

4

swaths of the two-lane road into a one-lane road. The encroachments also create a safety hazard for pedestrians, bicycles and equestrians, especially at night.

After staking the right of way, the County's Transportation Division sent notices to three properties instructing the owners to remove unpermitted encroachments within 60 days. Thereafter, the Department filed a Notice of Exemption for restoring the right of way, finding that the restoration was categorically exempt pursuant to CEQA Guidelines. (Cal. Code Regs., tit. 14, § 15301(c).)[2]

The Notice of Exemption referred to the project as, "Montecito Right of Way Restoration," and explained the project included "implementation of right of way restoration, repair, maintenance and operation of existing facilities to allow for public parking and continued use near the trailhead access within the public right of way adjacent to the Hot Springs Trailhead along East Mountain Drive." The work was needed because the public right of way "is currently unusable for public parking in many areas due to encroachments . . . installed in the public road right of way without the required road encroachment permits."

The Department determined the project was exempt from CEQA under Guideline section 15301(c) because it "involves the restoration of the existing roadway to maintain the safe traveling condition of the roadway right of way. The minor alteration of existing public facilities will allow for safe public

---

[2] CEQA's implementing regulations, the "Guidelines," are found in California Code of Regulations, title 14, section 15000, et seq. All subsequent regulatory citations to the Guidelines are to title 14 of the Code of Regulations.

5

parking for the pedestrians and also cyclists going to the adjacent public trails." Because the right of way areas to be restored to public use are within the existing developed roadway, the Department concluded the work would have no impact on the environment.

The Writ Petition.

Respondents, who own property in the area but are not owners of the properties that received notices, filed a petition for writ of mandate. They sought to prevent removal of the encroachments until Santa Barbara County complied with CEQA. Respondents alleged removal of the encroachments would have a significant impact on the environment because it would create additional parking spaces which would lead to more hikers using the trail and would make it more difficult to evacuate the neighborhood in the event of a wild fire.

The Preliminary Injunction.

Agreeing with respondents, the trial court issued a preliminary injunction prohibiting the removal of encroachments "within 0.5 miles of the Hot Springs Canyon trailhead, pending trial of this action." It disagreed with the County's determination that removal of encroachments was categorically exempt from CEQA review because the exemptions apply only where the project "involve[s] negligible or no expansion of . . . use," or only a "minor . . . alteration[ ]in the condition of land, water, and/or vegetation . . . ." (Guidelines, §§ 15301, 15304.)

The trial court concluded instead that the project to remove encroachments from the public right of way "was developed for the express purpose of creating substantial new and/or additional parking spaces to accommodate the skyrocketing increase in hikers on the Hot Springs Trial . . . ."

6

This larger project might expand use of the trail or otherwise have a significant impact on the environment. "Under these circumstances, the Court cannot find that there is no possibility, or no likelihood, that [respondents] will prevail on the merits" by showing the exemptions do not apply.

The trial court also declined to apply the exemption for "enforcement of a law, general rule, standard, or objective, administered or adopted by the regulatory agency." (Guidelines, § 15321.) It found instead that focusing only on the removal of encroachments "would impermissibly require dissecting the greater project as a whole into discrete pieces, since the fact that the County may have enforcement authority over unpermitted encroachments could not and should not apply to exempt from CEQA review a greater project which involves as one of its element[s] the clearing [of] unpermitted encroachments, which could potentially have a direct or indirect significant environmental impact on an area other than that where the encroachments are being removed."

The trial court further concluded that the balance of harm favored respondents. It gave little weight to the County's interest in providing roads that are safe for motorists, cyclists, pedestrians and equestrians, or safe parking near the trailhead because the County had tolerated the encroachments for many years. By contrast, "destruction of encroachments which have existed for many years with County's express or implied permission, will cause irreparable harm to the properties at issue. Many of the longstanding encroachments consist of mature landscaping which, once removed, will likely be gone forever." The trial court was not convinced County would have acted to remove the encroachments had "the issue of the demand

7

for increased trail parking not become a significant issue. They are being removed specifically to provide trail access parking." Once cleared, the right of way would be immediately available for public parking, "with potential instantaneous significant impacts to the sensitive trail environment caused by increased hiker counts."

The Peremptory Writ.

The trial court also ordered a peremptory writ to issue making a finding of fact that the County's order to remove encroachments was actually a "parking creation project" that was "capable of causing direct or reasonably foreseeable indirect effects on the trail environment and is therefore a 'project' within the meaning of CEQA." It rejected County's arguments that the Road Commissioner is not a public agency subject to CEQA and that the removal of encroachments was not a "project" within the meaning of CEQA. Because the removal of encroachments was, in the trial court's view, only one segment of a larger "parking creation" project for Hot Springs trail, the trial court concluded it was not properly viewed as a project to enforce or administer the encroachment laws.

The trial court rejected County's unclean hands defense because it concluded the County had acquiesced in the installation and maintenance of the encroachments. In addition, the harm created by respondents' conduct in violating the encroachment laws, "bears little to no relationship to the claimed injuries sustained by the petitioners, *i.e.,* the failure [of] County to fulfill its independent legal duty to comply with CEQA for its project to create parking to accommodate hikers seeking to access the Hot Springs Trail trailhead, given the potential that the

8

resulting increased hiker traffic on the trail could cause a change to the trail environment."

The trial court conceded that respondents "legally cannot" be "granted the exclusive use of public property," even though its writ would prevent the County from exercising control over the public right of way pending completion of a CEQA review. "Once it has complied with its CEQA obligations, and assuming that the project that is thereafter adopted still involves the creation of parking through the removal of rights-of-way encroachments, County will be free to proceed with such project, including enforcing the right-of-way encroachment laws."

The trial court concluded it would grant the writ of mandate because, "County failed to proceed in a manner required by law when it determined to proceed with the project of creating additional parking in the vicinity of the Hot Springs Trail trailhead without engaging in environmental review pursuant to CEQA." It explained that its decision would void any definitive determination made by the County to create parking for the trailhead area, and would "suspend all efforts by County to enforce the right-of-way encroachments (acting to effectively extend the existing preliminary injunction)" pending the trial court's determination that County had complied with CEQA. The trial court further declared that it would retain jurisdiction over the matter until the County has complied with CEQA, "or the Court of Appeal has reversed this Court's suspension order."

*Respondents' Request for Judicial Notice*
*and to Dismiss Appeal as Moot*

Respondents request that we take judicial notice of the trial court's statement of decision dated May 3, 2023, and that we dismiss the appeal as moot because the statement of

9

decision represents a final judgment on the merits of their writ petition. We grant the request to take judicial notice of the statement of decision. (Evid. Code, § 452, subd. (d).)

We decline, however, to dismiss this appeal as moot. But, a final judgment granting a permanent injunction renders an appeal from the order granting the preliminary injunction moot. (*People v. Rath Packing Co.* (1978) 85 Cal.App.3d 308, 314.) Final judgment has not yet been entered. County's cross-complaint has not been resolved and the trial court's statement of decision indicates that its peremptory writ is intended to extend the preliminary injunction pending County's compliance or this Court's reversal of the "suspension order." Our reversal of the preliminary injunction will impact the peremptory writ envisioned by the statement of decision and resolution of the County's cross-complaint. The matter is not moot. (See, e.g., *Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888 [case is not moot where ruling by court of appeal could have a "practical impact or provide the parties effectual relief"].)

Mootness aside, we have discretion to consider any matter, "(1) when the case presents a issue of broad public interest that is likely to recur . . . ; (2) when there may be a recurrence of the controversy between the parties; and (3) when a material question remains for the court's determination . . . ." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479-480.) This case involves issues of public interest relating to local governments' enforcement of encroachment laws and their obligations under CEQA. (*Leenay v. Superior Court* (2022) 81 Cal.App.5th 553, 573 ["The proper interpretation of a statute

10

presents a matter of public interest"]; see also, *Cundall v. Mitchell-Clyde* (2020) 51 Cal.App.5th 571, 575, fn.1.) We will exercise our discretion to decide this appeal.

*Standard of Review*

"When ruling on a motion for preliminary injunction, 'trial courts should evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued. [Citations.]' [Citations.]" (*Best Friends Animal Society v. Macerich Westside Pavilion Property LLC* (2011) 193 Cal.App.4th 168, 174.)

Our review of a preliminary injunction "may trigger any or all of the three standards of appellate review." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 408.) The trial court's evaluation and weighing of the parties' likelihood of success on the merits and the balance of harm is reviewed for abuse of discretion. (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69-70 (*IT Corp.*).) We review de novo the trial court's application of legal principles and we review its findings of fact under the substantial evidence standard. (*Huong Que, Inc., supra,* at pp. 408-409.)

Although the trial court has broad discretionary powers to grant or deny a preliminary injunction, it has no discretion to act capriciously or in a manner that "'transgresses the confines of the applicable principles of law . . . .'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773, quoting *City of Sacramento v. Drew* (1989) 207

11

Cal.App.3d 1287, 1297-1298.) "In other words, judicial discretion must be measured against the general rules of law and, in the case of a statutory grant of discretion, against the specific law that grants the discretion." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393.)

Code of Civil Procedure section 526 provides: "An injunction cannot be granted . . . to prevent the execution of a public statute by officers of the law for the public benefit." (§ 526, subd. (b)(4); see also *Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 500 (*Alfaro*).) As we explain, the trial court's order is at variance with this rule. The statute is subject to exceptions, including "where the public official's action exceeds his or her authority." (*Alfaro, supra,* at p. 501.) But that is not the situation here.

*CEQA*

CEQA is designed to protect and maintain California's environmental quality by compelling "'"'"'government at all levels to make decisions with environmental consequences in mind. . . .'"'"'" (*Citizens for a Green San Mateo v. San Mateo County Community College Dist.* (2014) 226 Cal.App.4th 1572, 1586.) Consistent with that legislative purpose, "we interpret CEQA to afford the most thorough possible protection to the environment that fits reasonably within the scope of its text." (*California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 381.) Although it requires that ""'"environmental considerations play a significant role in governmental decision making[,]" . . .'" (*Joshua Tree Downtown Bus. Alliance v. County of San Bernardino* (2016) 1 Cal.App.5th 677, 683 (*Joshua Tree*)), CEQA is not a "limitation or restriction on the power or authority of any public agency in the enforcement or administration of any

12

provision of law which it is specifically permitted or required to enforce or administer . . . ." (§ 21174.)

With limited exceptions, CEQA requires a public agency to prepare an environmental impact report (EIR) "'whenever substantial evidence supports a fair argument that a proposed project "may have a significant effect on the environment." . . .'" (*Pocket Protectors v. City of Sacramento* (2004) 124 Cal.App.4th 903, 927.) Certain activities are, however, categorically exempt from CEQA review. (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1092 (*Berkeley Hillside*); Guidelines, § 15300, et seq.)

County contends three categorical exemptions apply here. First, a project to repair or maintain existing facilities, including existing highways and streets, is categorically exempt if the project "involve[s] negligible or no expansion of . . . use." (Guidelines, § 15301, subd. (c).) Second, "minor public or private alterations in the condition of land . . . " are exempt. (*Id.*, § 15304.) Finally, the Guidelines exempt actions by a regulatory agency that involve the "enforcement of a law, general rule, standard or objective, administered or adopted by the regulatory agency." (*Id.*, § 15321.)

These categorical exemptions are subject to the exceptions listed in section 15300.2 of the Guidelines. As relevant here, this Guideline provides, "A categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (*Id.*, subd. (c).)

The Vehicle Code provides that public parking is allowed on any street or road unless the relevant local governing body adopts an ordinance prohibiting or restricting it. (Veh.

13

Code, §§ 21, subd. (a), § 22507, subd. (a).) The County has adopted no such ordinance with regard to East Mountain Drive. Public parking is therefore allowed on that road.

By contrast, both state law and County ordinances prohibit encroachments on the right of way of any public road. The Streets and Highways Code authorizes the county road commissioner to remove, after appropriate notice, any encroachment placed without a permit in any public right of way. (Sts. & Hy. Code, §§ 1480.5, 1481.) Property owners may not, consistent with state law, maintain unpermitted encroachments. (*Id.*, § 1460.)

Santa Barbara County has adopted an ordinance requiring a permit to install or maintain any "facilities or substructures in, on, over, or under any road right of way." (Santa Barbara County Code of Ordinances, section 28-3(b); Ord. No. 1491, § 4.) A County ordinance also provides that it is a misdemeanor to perform "any of the acts for which a permit is required by this article without first obtaining such permit." (*Id.*, section 28-53(c); Ord. No. 1491, § 54.)

In addition, the Department has adopted engineering design standards requiring that a "clear zone," of between 7 to 10 feet from the edge of pavement be maintained along county roads. The clear zone is defined as an "unobstructed, relatively flat area beyond the edge of the traveled way provided for the recovery of errant vehicles." The Montecito Fire Department's clearance standards also require that horizontal clearance of vegetation "shall be maintained, at a minimum, to the road right-of-way or the edge of the pavement depending on individual easements to maintain maximum traffic circulation in the event of emergency evacuation."

Likelihood of Success on the Merits.

"A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim." (*Butt v. State of California* (1992) 4 Cal.4th 668, 678.) Here, the trial court found that the project to remove encroachments was part of a larger project to increase the number of hikers using Hot Springs Trail by increasing parking on East Mountain Drive. Because it concluded this "larger" project could have a significant environmental impact, the trial court found the "smaller" project – removing encroachments from the public right of way – was not categorically exempt from CEQA review.

It further concluded that the road commissioner's authority to remove encroachments "cannot and should not immunize County from injunctive relief or legal responsibility under CEQA, simply because such actions are ordinarily within the County's enforcement authority." If the "larger project" violated CEQA, smaller projects undertaken without adequate environmental review to complete it "would no longer be lawful," and could be enjoined, "if the factors supporting issuance of an injunction otherwise exist."

The County meritoriously contends the trial court erred because CEQA does not limit its authority to enforce encroachment laws and because there is no substantial evidence of a larger project. The current project is properly considered a stand-alone project because it has independent utility. Considered in its proper context as a stand-alone project, the right of way restoration project is categorically exempt from CEQA because it involves the maintenance or repair of an

15

existing road and the enforcement of statutes and ordinances prohibiting unpermitted encroachments in the public right of way. In addition, there is no substantial evidence that the project presents unusual circumstances.

*Road Commissioner's Authority to Enforce*
*Encroachment Laws*

The Streets and Highways Code and Santa Barbara County ordinances forbid property owners from maintaining unpermitted encroachments in the public right of way. (Sts. & Hy. Code, § 1460; Santa Barbara County Ordinance No. 1491, section 4.) Compliance with these legal standards is not discretionary for property owners. Maintaining unpermitted encroachments is a misdemeanor and the Road Commissioner is authorized to remove such encroachments. (Sts. & Hy. Code, §1480.5; Santa Barbara County Ordinance No. 1491, section 54.) The trial court may not allow CEQA to trump the criminal law. CEQA is not "a limitation or restriction on the power or authority" of the Road Commissioner to enforce the encroachment laws. (§ 21174.)

"In general, a trial court may not grant an injunction '[t]o prevent the execution of a public statute by officers of the law for the public benefit.' [Citations.]" (*Jamison v. Department of Transportation* (2016) 4 Cal.App.5th 356, 363-364 (*Jamison*); *Alfaro, supra,* 98 Cal.App.4th at pp. 500-501.) One recognized exception to this general rule provides that an enforcement action may be enjoined where "the public official's action exceeds his or her authority." (*Alfaro, supra,* at p. 501.) Here, the trial court erroneously concluded respondents might succeed on the merits of their contention that the Road Commissioner exceeded his authority because a "larger project" might violate CEQA.

16

*Categorical Exemptions*

The County determined this project was categorically exempt from CEQA review because it consisted of repairing and maintaining an existing road (Guidelines, § 15301, subd. (c)) and involved only minor alterations to land or vegetation. (*Id.*, § 15304.) County further contends the project is also categorically exempt because it enforces the Streets and Highways Code and county ordinances prohibiting unpermitted private encroachments in a public right of way. (*Id.*, § 15321, subd. (a).)

Respondents contend County's reliance on these exemptions is a pretext because its "real" motivation is to increase hikers' access to Hot Springs Canyon by increasing parking on East Mountain Drive. But the County's "motivation" to recover public parking spaces is not inconsistent with its reliance on the CEQA exemptions. Public parking has always been allowed on East Mountain Drive. Respondents and other property owners thwarted access to it by installing unpermitted encroachments. Removing the encroachments does not "increase" or add new parking; it restores access to parking spaces that have always existed.

The trial court declined to apply the categorical exemptions because it found a "larger project" would involve an expansion of use (Guidelines, § 15301), and more than minor alterations. (*Id.*, § 15304.) It found the exemption for enforcement actions (*id.*, § 15321) did not apply here because "the fact that the County may have enforcement authority over unpermitted encroachments could not and should not apply to exempt from CEQA review a greater project which involves as one of its element[s] the clearing [of] unpermitted encroachments,

17

which could potentially have a direct or indirect significant environmental impact on an area other than that where the encroachments are being removed."

Each of these legal conclusions depends on the trial court's finding that the current project is one segment of a larger project that may have a significant environmental effect. In reaching this conclusion, the trial court erred. The County's project to restore public use of the public right of way by removing unpermitted and illegal private encroachments has independent utility and need not be linked to any future, as yet unannounced project.

"Project" is a term of art that refers to "'the whole of an action,'" rather than to each individual component of it. (*County of Ventura v. City of Moorpark* (2018) 24 Cal.App.5th 377, 385; *Banning Ranch Conservancy v. City of Newport Beach* (2012) 211 Cal.App.4th 1209, 1220 (*Banning Ranch*); Guidelines, § 15378, subd. (a).) The potential environmental impacts of a project are to be measured against a baseline that describes existing environmental conditions. (*Neighbors for Smart Rail v. Exposition Metro Line Construction Authority* (2013) 57 Cal.4th 439, 452; see also *Riverwatch v. County of San Diego* (1999) 76 Cal.App.4th 1428, 1453 ["environmental impacts should be examined in light of the environment as it exists when a project is approved"].) The lead agency involved in approving a project has discretion to determine that baseline. (*Neighbors for Smart Rail, supra*, at p. 452; *Communities for a Better Environment v. South Coast Air Quality Management Dist.* (2010) 48 Cal.4th 310, 328.)

CEQA forbids "piecemeal" review of the environmental effects of a project. (*McCann v. City of San Diego*

18

(2021) 70 Cal.App.5th 51, 84 (*McCann*); *Communities for a Better Environment v. City of Richmond* (2010) 184 Cal.App.4th 70, 98.) Environmental review under CEQA cannot be avoided by chopping up a large or cumulative project that has significant environmental effects into 'bite-size pieces' that have insignificant effects individually." (*El Dorado County Taxpayers for Quality Growth v. County of El Dorado* (2004) 122 Cal.App.4th 1591, 1599.)  We review piecemealing claims de novo.  (*Make UC a Good Neighbor v. Regents of University of California* (2023) 88 Cal.App.5th 656, 683 (*Make UC a Good Neighbor*); *Banning Ranch, supra,* 211 Cal.App.4th at p. 1224.)

Improper piecemealing occurs where "the purpose of the reviewed project is to be the first step toward future development." (*Banning Ranch, supra,* 211 Cal.App.4th at p. 1223.)  An environmental analysis must consider "the environmental effects of future expansion or other action if (1) it is a reasonably foreseeable consequence of the initial project; and (2) the future expansion or action will be significant in that it will likely change the scope or nature of the initial project or its environmental effects.  Absent these two circumstances, the future expansion need not be considered in the EIR for the proposed project. Of course, if the future action is not considered at that time, it will have to be discussed in a subsequent EIR before the future action can be approved under CEQA." (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 396 (*Laurel Heights*).)

*Laurel Heights* concluded that an EIR improperly segmented a university's decision to relocate its school of pharmacy to a specific building.  Although the EIR stated the school would occupy 100,000 square feet of the building, it did not

19

mention that the school intended to occupy the remaining 254,000 square feet when the existing tenant moved out. Because school officials had already publicly announced their intention to use the whole building, the EIR should have analyzed that eventuality. (*Laurel Heights, supra,* 47 Cal.3d at pp. 396-397.)

Piecemealing may also occur when "the reviewed project legally compels or practically presumes completion of another action." (*Banning Ranch, supra,* 211 Cal.App.4th at p. 1223.) For example, the court concluded in *Tuolumne County Citizens for Responsible Growth, Inc. v. City of Sonora* (2007) 155 Cal.App.4th 1214, that a proposed home improvement center and the realignment of a road were part of a single project because the home improvement center could not be completed and opened without the realigned road. (*Id.* at p. 1231.)

A project may properly be considered separately from potential future projects, however, when the two "have different proponents, serve different purposes or can be implemented independently." (*Banning Ranch, supra,* 211 Cal.App.4th at p. 1223; see also, *Make UC a Good Neighbor, supra,* 88 Cal.App.5th at p. 684.) A project may also be reviewed without reference to potential future projects when it has "significant independent or local utility" and would be implemented with or without approval of the future project, even if the two are related in some other respects. (*Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 237; *Sierra Club v. West Side Irrigation Dist.* (2005) 128 Cal.App.4th 690, 699.)

In *Banning Ranch, supra,* for example, appellants contended that an EIR for a public park and access road should also have considered the impact of future residential and

20

commercial development on an adjacent property. The court of appeal rejected this contention because the park and the residential development served different purposes and each had independent utility. The park would provide recreational opportunities for existing residents while the future project would develop new housing and commercial buildings. In addition, the park had independent utility because "the City can and will build the park regardless of any development" on the adjacent property. (*Banning Ranch, supra,* 211 Cal.App.4th at p. 1226.)

Similarly, in *McCann, supra,* 70 Cal.App.5th 51, the City of San Diego announced a group of projects to convert overhead utility wires to an underground system with each undergrounding project covering a different geographical area. The City declared one undergrounding project exempt from CEQA and adopted a mitigated negative declaration (MND) for another. A resident contended the City violated CEQA by segmenting what should have been a single, citywide project into smaller projects.

The court of appeal rejected this piecemealing claim. "Here, each utility undergrounding project was independently functional and did not rely on any other undergrounding project to operate." (*McCann, supra,* 70 Cal.App.5th at p. 85.) The functionality of each completed undergrounding project would not be affected by the completion or abandonment of other undergrounding projects. "Although similar in nature, each undergrounding project stands alone such that it is not the 'first step' toward additional projects and does not 'legally compel[] or practically presume[] completion of another action.'" (*Id.* at p. 85, quoting *Banning Ranch, supra,* 211 Cal.App.4th at p. 1223.)

21

Here, the Road Commissioner described the project as the "Montecito Right of Way Restoration" project, explaining that it would also improve access to the Hot Springs trailhead. As defined by the Road Commissioner, the project would restore the right of way by removing unpermitted private encroachments. This would maintain the safe traveling condition of the road for vehicles, pedestrians and cyclists and restore public parking near the trailhead.

To carry out the project, the Road Commissioner sent notices to three property owners to remove unpermitted encroachments from the public right of way. Respondents and the trial court inferred that these notices were the first step of a "larger project," which involves encouraging many more hikers to use the Hot Springs trail by making it easier for them to park near the trailhead. Because respondents had at least some chance of demonstrating that a "larger project" might have significant environmental effects, the trial court concluded respondents had at least some chance of succeeding on the merits of their claim that the project is not categorically exempt from CEQA.

We conclude the trial court erred as a matter of law. The current project as defined by the Road Commissioner has independent utility, regardless of whether notices are sent to other property owners in the future or other, as yet unannounced actions are taken to increase access to or use of the Hot Springs trail. Removing encroachments brings the properties into compliance with the Streets and Highways Code and county ordinances and engineering standards by restoring the "clear zone" in front of these properties. It also recovers space for public parking. These results occur regardless of whether other

22

homeowners are later notified to remove encroachments or other steps are taken to increase hikers' access to Hot Springs trail.

*Exception to Categorical Exemptions.*

Guidelines section 15300.2 provides, "A categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (*Id.*, subd. (c).) Respondents contend that unusual circumstances exist here because East Mountain Drive is adjacent to environmentally sensitive Hot Springs Canyon. They contend removing the encroachments will have an environmental impact because it will create more parking which will draw more hikers to the canyon. The trial court agreed with this analysis. We conclude the trial court erred.

Assessing whether the unusual circumstances exception applies requires us to engage in the analysis developed in *Berkeley Hillside, supra,* 60 Cal.4th 1086. There, our Supreme Court instructed that, where a project is otherwise categorically exempt, "a party challenging the exemption has the burden of producing evidence supporting an exception. [Citations.] . . . [T]o establish the unusual circumstances exception, it is not enough for a challenger merely to provide substantial evidence that the project *may* have a significant effect on the environment, because that is the inquiry CEQA requires absent an exemption. [Citation.] . . . On the other hand, evidence that the project *will* have a significant effect *does* tend to prove that some circumstance of the project is unusual." (*Id.* at p. 1105.)

The challenger "may establish an unusual circumstance without evidence of an environmental effect, by showing that the project has some feature that distinguishes it

from others in the exempt class, such as its size or location. In such a case, to render the exception applicable, the party need only show a reasonable possibility of a significant effect due to that unusual circumstance. Alternatively, under our reading of the guideline, a party may establish an unusual circumstance with evidence that the project will have a significant environmental effect. That evidence, if convincing, necessarily also establishes 'a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances.' (Guidelines, § 15300.2, subd. (c).)" (*Berkeley Hillside, supra,* 60 Cal.4th at p. 1105.)

Under either line of analysis, the party challenging the exemption has the burden to establish by substantial evidence either that the project presents an unusual circumstance or that it will have a significant environmental effect. (*Walters v. City of Redondo Beach* (2016) 1 Cal.App.5th 809, 820; *Citizens for Environmental Responsibility v. State ex rel. 14th Dist. Ag. Assn.* (2015) 242 Cal.App.4th 555, 575-576 (*Citizens for Environmental Responsibility*).) "This standard requires that we "'resolv[e] all evidentiary conflicts in the agency's favor and indulg[e] in all legitimate and reasonable inferences to uphold the agency's finding.'"" (*Walters, supra,* at p. 820.) Substantial evidence "includes facts, reasonable assumptions predicated upon facts, and expert opinion supported by facts. [Citations.] It does not include '[a]rgument, speculation, unsubstantiated opinion or narrative, [or] evidence which is clearly inaccurate or erroneous . . . .'" (*North Coast Rivers Alliance v. Kawamura* (2015) 243 Cal.App.4th 647, 673.)

"'[R]eviewing courts, after resolving all evidentiary conflicts in the agency's favor and indulging in all legitimate and

24

reasonable inferences to uphold the agency's finding [of no unusual circumstances], must affirm that finding if there is any substantial evidence, contradicted or uncontradicted, to support it. . . .'" (*Citizens for Environmental Responsibility, supra,* 242 Cal.App.4th at p. 575.) As a reviewing court, we are required to give the lead agency "'the benefit of the doubt on any legitimate, disputed issues of credibility. . . .'" (*Joshua Tree, supra,* 1 Cal.App.5th at p. 692.)

The trial court found there was an unusual circumstance here because of the project's location adjacent to Hot Springs Canyon. But the Road Commissioner and the County considered the setting in reaching their conclusion that the project was categorically exempt. Like many roads in Montecito, East Mountain Drive is an existing, developed road portions of which are located near an Environmentally Sensitive Habitat (ESH) area overlay zone. The public may park on all county roads in Montecito, unless they are otherwise posted. By definition, this includes a county road like East Mountain Drive that is adjacent to an ESH area overlay zone. East Mountain Drive's proximity to the overlay zone does not make it unique in Montecito, nor is it evidence of an unusual circumstance. The County determined that the project would involve only the "restoration of existing roadway" to "maintain the safe traveling condition" of the road and "allow for safe public parking for the pedestrians and also cyclists going to the adjacent public trails." This is substantial evidence supporting the County's determination of no unusual circumstances. The absence of unusual circumstances "'means the exception does not apply.'" (*Banker's Hill, Hillcreast Park West Community Preservation Group v. City of San Diego* (2006) 139 Cal.App.4th 249, 278.)

25

<u>Irreparable Harm.</u>

The second factor that must be considered in determining whether to grant a preliminary injunction is "the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief." (*White v. Davis* (2003) 30 Cal.4th 528, 554.) Like the trial court, we are required to consider whether respondents have shown they "would suffer grave or irreparable harm from the issuance of the preliminary injunction and, if so, to balance the relative actual harms to the parties, while taking into account the degree of certainty of the outcome on the merits." (*Uber Technologies, supra,* 56 Cal.5th at pp. 302-303.) The ultimate goal of this balancing process is "to minimize the harm which an erroneous interim decision may cause." (*IT Corp, supra,* 35 Cal.3d at p. 73.)

In balancing the relative harms here, the trial court gave no weight to either the County's interest or the public interest in enforcing the encroachment laws. Instead, it found County's arguments about irreparable harm "relate more to its perceptions of the benefits of proceeding with the project, than they do to any legitimate harm which it or the public would suffer if the status quo were preserved . . . . Indeed, the Court sees little, if any, harm to County should the injunction issue." Allowing the encroachments to remain, the trial court reasoned, would not cost the County any money or prevent it from enforcing the encroachment laws if the petition is ultimately denied.

Respondents, in the trial court's view, would be harmed if their encroachments were removed. "[P]ermitting the destruction of encroachments which have existed for many years with County's express or implied permission, will cause irreparable harm to the properties at issue. Many of the

26

longstanding encroachments consist of mature landscaping which, once removed, will likely be gone forever."

We conclude the trial court abused its discretion when it found County had no legitimate interest in enforcing the laws against encroachments and that respondents would be irreparably harmed by complying with those laws. First, the record includes substantial evidence that encroachments in the public right of way present both fire safety risks and public safety risks to motorists, pedestrians and cyclists. Even without that evidence, the encroachment statutes and ordinances themselves represent a legislative determination that the public interest is served by prohibiting and authorizing the removal of unpermitted encroachments in the public right of way. The public interest is served by their enforcement. (*IT Corp, supra,* 35 Cal.3d at p. 72; see also *Carson Mobilehome Park Owwners' Assn. v. City of Carson* (1983) 35 Cal.3d 184, 195 ["courts lack jurisdiction to enjoin the enforcement of a validly adopted constitutional ordinance"]; Code Civ. Proc., § 526.)

Second, the record contains no substantial evidence that respondents will be irreparably harmed by removal of the encroachments. The plants and other objects they have installed in the public right of way can presumably be moved off public property and onto respondents' private property. In any event, respondents have an obligation to obey the law, including the encroachment laws. (*Jamison, supra,* 4 Cal.App.5th at pp. 365-366.) "[A] party suffers no grave or irreparable harm by being prohibited from violating the law . . . ." (*Uber Technologies, supra,* 56 Cal.5th at p. 306; see also *People ex rel. Reisig v. Acuna* (2010) 182 Cal.App.4th 866, 882 [party "cannot claim harm" from

27

restrictions imposed by a gang injunction on "activities that constitute the public nuisance"].)

<em>Conclusion</em>

The request for judicial notice is granted.  The order granting a preliminary injunction is reversed.  This matter is remanded to the Superior Court for further proceedings consistent with this opinion.  Appellants shall recover their costs on appeal.

YEGAN, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Rachel Van Mullem, County Counsel, Lina Somait, Sr. Deputy, for Defendants and Appellants.

Jennifer Bacon Henning, for amicus curiae on behalf of appellants.

Cappello & Noël and A. Barry Cappello, David L. Cousineau, G. Michael Brelje, for Plaintiffs and Respodents.

Filed 8/16/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CHRISTOPHER ANDERSON et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> COUNTY OF SANTA BARBARA et al., <br><br> Defendants and Appellants. | 2d Civil No. B322465 <br> (Super. Ct. No. 22CV01299) <br> (Santa Barbara County) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |

THE COURT:

      The opinion in the above-entitled matter filed on July 19, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

GILBERT, P. J.        YEGAN, J.        BALTODANO, J.