Filed 9/29/23  Luo v. Bonta CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| YU LUO et al., Plaintiffs and Appellants, v. ROB BONTA, as Attorney General, etc., et al., Defendants and Respondents. | A164164 (Alameda County Super. Ct. No. RG20057577) |

The collective plaintiffs, Yu Luo, Wei Lin, Carpenter, Zuckerman & Rowley (CZR), and Bhanji Law Firm, appeal from an order sustaining without leave to amend defendants' demurrers to collective plaintiffs' first amended complaint challenging the constitutionality of certain provisions of the Medical Injury Compensation Reform Act (MICRA).[1]  We affirm.

---

[1] The general rule is that an order sustaining a demurrer without leave to amend is not appealable but that a party may appeal from the entry of dismissal after such order.  (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527, fn. 1.)  Here, no judgment of dismissal is in the record.  However, " 'when the trial court has sustained a demurrer [without leave to amend] to all of the complaint's causes of action, appellate courts may deem the order to incorporate a judgment of dismissal, since all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment.' [Citation.]" (*Ibid.*)  That is the case here, and we deem the order on the

1

## FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2020, collective plaintiffs filed a complaint for declaratory and injunctive relief against the Attorney General of the State of California (Attorney General); Alan Steinbrecher in his capacity as Chairman of the Board of Trustees of the State Bar of California; Thomas Mampalam, M.D.; Robert Binder, M.D.; Kathryn Klima, M.D.; Justin Davis, P.A.; Anthony Allen, M.D.; East Bay Neurospine; Bay Imaging Consultants Medical Group; Alta Bates Summit Berkeley; Alta Bates Summit Oakland; and Sutter Health Hospital. We refer to Thomas Mampalam, M.D., Robert Binder, M.D., Kathryn Klima, M.D., Justin Davis, P.A., Anthony Allen, M.D., East Bay Neurospine, Bay Imaging Consultants Medical Group, Alta Bates Summit Berkeley, Alta Bates Summit Oakland, and Sutter Health Hospital collectively as the healthcare defendants.

The healthcare defendants are also named in a separate, medical malpractice lawsuit filed by Yu Luo and Wei Lin, in pro. per. (Super. Ct. Alameda County, No. RG19048064). Luo and Lin allege claims for medical negligence and loss of consortium and seek general damages; past and future medical and related expenses; and "[e]conomic and non-economic damages according to proof and not limited by California Civil Code § 3333.2, which is unconstitutional . . . ."

In this action, collective plaintiffs challenge the constitutionality of two provisions of MICRA: former Civil Code section 3333.2, which capped the amount of damages a medical malpractice plaintiff may recover for noneconomic damages at $250,000 (former Civ. Code, § 3333.2, subd. (b)), and former Business and Professions Code section 6146, which limited the

demurrers to incorporate a judgment of dismissal and will review the order. (*Ibid.*)

2

amount of contingency fees a law firm may charge medical malpractice plaintiffs.[2]

The Attorney General demurred to collective plaintiffs' original complaint on the basis that each claim failed to state facts sufficient to constitute a cause of action. The Attorney General argued that each of collective plaintiffs' constitutional challenges have been rejected by either the California Supreme Court or the Courts of Appeal. On February 2, 2021, the trial court sustained the demurrer with leave to amend. The order states that "[i]n amending, plaintiffs shall allege the basis for the law firm plaintiffs' standing to assert the claims alleged in this case."[3] Collective plaintiffs' first

---

[2] Effective January 1, 2023, the challenged statutes were amended by Assembly Bill No. 35 (2021–2022 Reg. Sess.). Civil Code section 3333.2 currently states that civil liability for noneconomic damages against health care providers in professional negligence actions filed on or after January 1, 2023, and not involving wrongful death, shall not exceed $350,000. (Civ. Code, § 3333.2, subd. (b).) In actions involving wrongful death, noneconomic damages shall not exceed $500,000. (Civ. Code, § 3333.2, subd. (c).) In addition, the respective dollar amounts shall increase by set amounts through January 1, 2033, and thereafter shall be adjusted for inflation each year, by 2 percent. (Civ. Code, § 3333.2, subds. (g) & (h).)

Business and Professions Code section 6146 was amended, effective January 1, 2023, to state that in negligence actions against healthcare providers an attorney may contract for a contingency fee of up to 25 percent of the net recovery prior to the filing of a complaint or arbitration demand or 33 percent of the net recovery amount after the filing of a complaint or arbitration demand. (Bus. & Prof. Code, § 6146, subds. (a)(1) & (2), (c)(1).) Additionally, in actions tried in court or arbitrated, the attorney or the plaintiff may file a motion seeking an increased contingency percentage, for good cause. (Bus. & Prof. Code, § 6146, subd. (a)(3).) Former Business and Professions Code section 6146 provided the following schedule for contingency fees: 40 percent of the first $50,000 recovered; 33 1/3 percent of the next $50,000 recovered; 25 percent of the next $500,000 recovered; and 15 percent of any recovery amount over $600,000.

[3] The healthcare defendants filed a motion for stay of action, which was heard on the same day as the Attorney General's demurrer. The healthcare

amended complaint (FAC) contains the same claims as the original complaint. The FAC alleges that Luo and Lin sought to retain CZR and Bhanji Law Firm (law firm plaintiffs) to represent them in their medical malpractice action against the healthcare defendants. However, because Luo and Lin's damages are primarily noneconomic, it is not economically feasible for the law firm plaintiffs to represent them. Specifically, the FAC alleges that the law firm plaintiffs will spend at least $200,000 in costs to prosecute the case against the healthcare defendants and that given the $250,000 noneconomic damages cap and the contingency fee structure, the law firm plaintiffs' maximum attorney's fee recovery is $20,000. Luo and Lin allegedly were unable to locate any alternative lawyer willing to accept their representation based on the MICRA fee schedule, and they filed their separate complaint against the healthcare defendants in pro. per.

The FAC asserts that the rationale for adopting MICRA is no longer valid. It alleges that since the 1988 enactment of rate regulation under Proposition 103, medical malpractice insurance premiums have increased an average of 0.5 percent per year and that it is not reasonably foreseeable that rising medical malpractice insurance rates will threaten the availability of health care. It further alleges that Civil Code section 3333.2's cap on

---

defendants argued that the collective plaintiffs' claims were not ripe for determination because Luo and Lin's medical malpractice action was pending and there had been no determination of liability or the amount of noneconomic damages. The trial court denied the motion in part, stating that "plaintiffs' claim that the challenged MICRA provisions impermissibly restrict their access to the courts is ripe for adjudication." However, it stayed discovery pending a decision on the pleadings.

4

noneconomic damages has not been adjusted for inflation since 1975[4] and that based upon inflationary changes, $250,000 in 1975 is worth about $55,000 today.

Collective plaintiffs claim that the combination of MICRA's restrictions on noneconomic damages and on contingency fee agreements deprive Luo and Lin of the ability to obtain legal redress for the medical negligence they have suffered. They allege the challenged statutes are unconstitutional based on (1) the right to petition the government for redress of grievances under the First Amendment and Fourteenth Amendment of the United States Constitution and article I, section 3, of the California Constitution; (2) the prohibition against government taking private property without just compensation under the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 19, of the California Constitution; (3) the equal protection clauses under the Fourteenth Amendment to the United States Constitution and article I, section 7, and article IV, section 16, of the California Constitution; (4) the due process clauses of the Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a), of the California Constitution; and (5) the right to a jury trial under article I, section 16, of the California Constitution. Plaintiffs seek a declaration that "*Civil Code* § 3333.2's cap on noneconomic damages separately and, especially when coupled with *Business and Professions Code* § 6146's restriction on attorneys' fees, violate the U.S. and California Constitutions." (*Sic.*)

---

[4] Plaintiffs' opening brief acknowledges that Assembly Bill No. 35 (2021–2022 Reg. Sess.) recently amended Civil Code section 3333.2 and Business and Professions Code section 6146. (See footnote 2, *ante*, page 2.)

The Attorney General demurred to the FAC, arguing first that the law firm plaintiffs had no standing to challenge the constitutionality of MICRA and that they failed to comply with the trial court's prior order to allege the basis for their standing in the amended complaint. The Attorney General further argued that each of the collective plaintiffs' constitutional challenges have been rejected by either the California Supreme Court or the Courts of Appeal and, therefore, they fail to state a claim. Defendant Steinbrecher filed a motion to join the Attorney General's demurrer. The healthcare defendants also demurred to the FAC. They too argued that the law firm plaintiffs lack standing. They further argued that the plaintiffs' claims were not ripe for adjudication because the asserted constitutional challenges contemplate events that had not occurred, to wit, there had been no jury verdict in the underlying medical malpractice litigation awarding noneconomic damages over $250,000. In addition, the healthcare defendants raised the same arguments as the Attorney General that each of the constitutional challenges fails as a matter of law.

The trial court granted defendant Steinbrecher's motion to join the Attorney General's demurrer and sustained the demurrers without leave to amend. The order summarizes the changes in the FAC as follows: "The amended complaint . . . omits the introductory language, and adds allegations to the first cause of action for right to petition alleging that Roa v. Lodi Memorial Group, Inc. (1985) 37 Cal.3d 920, did not address the right to petition, so the court cannot read such a holding into the case, adds allegations to the first through seventh cause of action arguing that Chan v. Curran (2015) 237 Cal.App.4th 601, does not address plaintiffs' constitutional challenges because none of the alternative litigation options suggested in Chan (i.e., that litigants could retain counsel on an hourly basis, seek

6

pro bono assistance, or litigate in pro per), are available to them because of either lack of competence by Mr. Luo, or indigence." The order further addresses each of collective plaintiffs' constitutional challenges and finds that the issues raised have been rejected by prior appellate and California Supreme Court decisions. The trial court denied leave to amend because the collective plaintiffs failed to demonstrate how they could amend their complaint to overcome the legal arguments raised in the demurrer, and it dismissed the complaint. The trial court did not address the Attorney General's argument that the law firm plaintiffs lacked standing. However, it rejected the healthcare defendants' argument that the claims were not ripe, stating that its prior order denying the healthcare defendants' motion to stay rejected the same argument.

## DISCUSSION

### I.     *Standard of Review*

On an appeal from a judgment of dismissal after a demurrer is sustained without leave to amend, we first review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*San Francisco Unified School Dist. ex rel. Contreras v. Laidlaw Transit, Inc.* (2010) 182 Cal.App.4th 438, 444–445.) We treat the demurrer as admitting all material facts properly pleaded but not contentions, deductions or conclusions of fact or law. (*Id.* at p. 445.) Next, we determine whether the trial court abused its discretion by sustaining the demurrer without leave to amend. (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292.) To establish an abuse of discretion, plaintiffs must show that there is a reasonable possibility they could cure the defect by amending the complaint. (*Ibid.*)

## II.  *MICRA*

MICRA was enacted in 1975 in response to a healthcare crisis in California.  (*Chan v. Curran* (2015) 237 Cal.App.4th 601, 607–608 (*Chan*).)  " 'The Legislature . . . enacted a comprehensive, multifaceted scheme designed to address a perceived threat to our state's health care system by reducing the cost of medical malpractice insurance.' "  (*Id.* at p. 608.)  Civil Code section 3333.2 (capping noneconomic damages) and Business and Professions Code section 6146 (limiting contingency fees in medical malpractice actions) are both part of MICRA's interrelated provisions.  (*Ibid.*)

## III.  *Analysis*

### A.  **Standing and Ripeness**

Both the Attorney General and the healthcare defendants argued in their demurrers that the law firm plaintiffs lack standing because they have suffered no injury and the FAC does not allege a violation of the law firm plaintiffs' constitutional rights.  The trial court did not address this argument either at the hearing or in its order.  On appeal, the Attorney General and the healthcare defendants raise the issue of the law firm plaintiffs' standing in the respondents' briefs.

The Attorney General further argues, for the first time on appeal, that Luo and Lin have no standing because they have not alleged how they have been injured by the challenged statutes.  The healthcare defendants, in the trial court and on appeal, raise the related issue of ripeness, arguing that Luo and Lin's claims are not ripe for adjudication because they contemplate events that have yet to occur.  They argue that there has been no determination of liability or noneconomic damages in the underlying malpractice action.

We question whether the plaintiffs, particularly the law firm plaintiffs, have standing. (See *Dominguez v. Bonta* (2022) 87 Cal.App.5th 389, 414.)[5] However, we do not need to address these issues because we affirm the trial court's sustaining the demurrer on the basis that none of the plaintiffs' constitutional claims state facts sufficient to constitute a cause of action.

Before reaching the constitutional arguments, we address collective plaintiffs' contention that the trial court's order should be reversed because the granting of the demurrer was procedurally improper. They assert that because they have alleged an actual controversy relating to the legal rights and duties of the parties, their claim is sufficient to survive a demurrer and they should be permitted to develop an evidentiary record before the constitutional issues are resolved. Collective plaintiffs argue that the FAC alleges facts that demonstrate "a constitutionally-significant change in circumstances such that MICRA's cap on non-economic damages and limit on contingency fee can no longer pass constitutional muster." They refer to their allegations regarding the Legislature's original basis for enacting MICRA to

---

[5] The respondents notified us of the recent Fifth Appellate District decision in *Dominguez v. Bonta, supra,* 87 Cal.App.5th 389, which affirmed a dismissal of a lawsuit filed by a medical malpractice plaintiff and CZR alleging the same constitutional challenges to MICRA as in this case. In *Dominguez*, the medical malpractice plaintiffs alleged they were currently paying their counsel an hourly rate to prosecute the underlying medical malpractice action but that they could not afford to continue doing so and that they could only afford to be represented on a contingency basis. (*Id.* at p. 395.) The trial court sustained the Attorney General's demurrer without leave to amend, finding that none of the plaintiffs had standing because they did not allege injury. (*Id.* at p. 397.) The trial court further found that the constitutional issues raised in the complaint had previously been litigated and rejected in other cases and that the relief sought in plaintiffs' complaint " 'is more appropriately sought before the Legislature.' " (*Ibid.*) The Fifth District Court of Appeal affirmed the trial court's ruling on the basis that the plaintiffs lacked standing. (*Id.* at pp. 412, 417, 419.)

address an insurance and healthcare crisis, and their factual assertions that 45 years later, insurance rate increases are moderate, insurance companies are profitable, there is significant competition in the insurance market, and a large portion of payments made by insurers are for defense costs rather than settlement or verdict payments to injured parties.

As explained in *Coffman Specialties, Inc. v. Department of Transportation* (2009) 176 Cal.App.4th 1135, it is well settled that the validity of both facial and as-applied challenges to the constitutionality of statutes may be decided on demurrer. (*Id.* at p. 1144, citing *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 478; *Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166, 172; *Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 509–510 ["the propriety of resolving a constitutional claim on demurrer does not depend upon whether a challenge is styled facial or as applied; rather, it depends on whether the complaint sets forth a claim that can be resolved as a question of law"].) As we explain *post*, plaintiffs "changed circumstances" allegations have been rejected by other courts and fail to establish that the challenged statutes violate the plaintiffs' constitutional rights.

### B. Constitutional Challenges

As our colleagues in Division One summarized in *Chan*, "During the 1980's the Supreme Court upheld many of MICRA's provisions against constitutional challenges, including section 3333.2 (*Fein* [*v. Permanente Medical Group* (1985)] 38 Cal.3d [137,] 159 [upholding § 3333.2]; *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 931–932 [211 Cal.Rptr. 77, 695 P.2d 164] (*Roa*) [upholding Bus. & Prof. Code, § 6146, limiting contingency fees]; *Barme v. Wood* (1984) 37 Cal.3d 174 [207 Cal.Rptr. 816, 689 P.2d 446] (*Barme*) [upholding § 3333.1, limiting collateral source recovery from malpractice defendants]; *American Bank* [*& Trust Co. v. Community Hospital*

10

(1984)] 36 Cal.3d [359,] 372 [upholding Code Civ. Proc., § 667.6, governing periodic payouts of and imposing some limits on future damages].)" (*Chan, supra,* 237 Cal.App.4th at p. 608.)  We analyze collective plaintiffs' claims and further discuss the relevant precedents *post*.

>     1.     Right to Petition

Collective plaintiffs allege that the challenged statutes infringe on their right to petition the courts.  They argue the challenged statutes effectively preclude them from prosecuting their medical malpractice action.  They further contend that their claims involve " 'litigation funding decisions,' " and they cite *Buckley v. Valeo* (1976) 424 U.S. 1 (*Buckley*) in support of their contention that the strict scrutiny standard applies.[6]

We find that collective plaintiffs' claim based on a violation of the right to petition the courts fails as a matter of law.  First, the FAC alleges that Luo and Lin filed a medical malpractice complaint in pro. per.[7]  Thus, the challenged statutes have not prevented the plaintiffs from accessing the courts.  (*Chan, supra*, 237 Cal.App.4th at p. 627 [holding MICRA's noneconomic damages cap does not prevent access to courts].)  Very similar arguments were made and rejected in *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920 (*Roa*) and *Chan*.  In *Roa*, the California Supreme Court

---

[6] Under the strict scrutiny standard of review, a statute will be upheld if the state establishes a compelling interest justifying the statute and demonstrates that distinctions in the statute are necessary to further the state's compelling interest.  (*People v. Yang* (2022) 78 Cal.App.5th 120, 136.)

[7] The FAC alleges that plaintiffs lack the mental capacity to represent themselves and that the court in the underlying medical malpractice case appointed a guardian ad litem for Luo because he suffers from dementia and brain damage.  These allegations do not alter our determination that the challenged statutes do not impermissibly infringe on the plaintiffs' right to petition the courts.  Their complaint, filed in pro. per., may proceed with Luo's interest being represented through his guardian ad litem.

11

considered a constitutional challenge to Business and Professions Code section 6146. It stated that "[s]tatutory limits on attorney fees are not at all uncommon, either in California or throughout the country generally," and that the validity of such legislative regulation of attorney fees is well established. (*Roa*, at pp. 926–927.) *Roa* concluded that "legislative ceilings on attorney fees are in no respect 'constitutionally suspect' or subject to 'strict' judicial scrutiny." (*Id.* at p. 927.)

Collective plaintiffs attempt to distinguish *Roa* by arguing that it did not consider arguments relating to the right to petition but, instead, only considered whether Business and Professions Code section 6146 violated due process, equal protection, and the separation of powers. We decline to read *Roa* so narrowly.

*Roa* states that the plaintiffs' constitutional arguments were based on alleged violations of due process, equal protection, and separation of powers. However, the court also addressed, and rejected, an argument made by one amicus curiae that the statute violated the right to petition and should be subject to a strict scrutiny analysis. (*Roa, supra*, 37 Cal.3d at pp. 924, 927, fn. 5.) The amicus curiae's argument relied on *Buckley, supra*, 424 U.S. 1, 51–54, which invalidated, on First Amendment grounds, statutory limits on the amount candidates for public office can spend on their campaigns. *Roa* rejected the amicus curiae's argument that MICRA violates plaintiffs' right under the First Amendment to decide for themselves how much to spend on attorneys' fees. (*Roa, supra*, 37 Cal.3d at p. 927, fn. 5.) The California Supreme Court described the argument as "creative" but found "its logic clearly proves too much" in that it would preclude any statutory limitation on attorneys' fees. (*Ibid.*) Here, plaintiffs similarly argue that *Buckley*'s holding applying a strict scrutiny standard should be extended to apply to them

12

because "[i]n the judicial context, the expenditure of money for attorneys' fees is no less essential to the exercise of First Amendment rights." This argument was rejected in *Roa*. (*Roa*, at p. 927, fn. 5.)

Collective plaintiffs further attempt to distinguish *Roa* by arguing that they, in contrast to the plaintiffs in *Roa*, have pleaded facts supporting their claim. Collective plaintiffs are correct that *Roa* references the lack of any factual support for the plaintiffs' factual assertions. (*Roa, supra*, 37 Cal.3d at p. 930.) The procedural posture in *Roa* was an appeal from an attorney fees order entered after the trial court approved settlement of a medical malpractice action. (*Id.* at p. 924.) The attorney fees order rejected the plaintiffs' constitutional challenges to Business and Professions Code section 6146 and the plaintiffs' request to award a contingency fee at a percentage higher than that permitted under the statute. (*Roa*, at p. 924.) Thus, the *Roa* plaintiffs were able to retain counsel and pursue their claim and had no factual support for their claimed constitutional violations based on an inability to retain counsel in medical malpractice actions.

In contrast, Luo and Lin here allege that they have not been able to retain counsel due to the fee limitation and the nonecomonic damages cap. However, we do not agree that these facts are sufficient to state a claim that the challenged statutes are unconstitutional because they infringe on their right to petition the government for redress of grievances. Luo and Lin's alleged inability to retain an attorney has not prevented them from accessing the courts, which they have done in pro. per. As our colleagues in Division One explained in *Chan*, "MICRA's damages cap does not invariably close the courthouse doors to malpractice plaintiffs. Even assuming it diminishes the number of cases taken by lawyers on contingency, it does not prevent individuals from pursuing their own cases, hiring an attorney on an hourly

13

basis, or seeking pro bono legal assistance. [Citations.] A malpractice victim may also negotiate a resolution of his or her claim, even if that may prove difficult." (*Chan, supra*, 237 Cal.App.4th at p. 627.) Although *Chan* does not specifically address the right to petition, it analyzes the same alleged harm in the context of a due process claim and finds that "while MICRA's noneconomic damages cap may well influence an attorney's decision to take or reject a medical malpractice case on contingency, the cap does not violate a due process right to court access." (*Ibid.*) Similarly, here, although it is alleged that MICRA's contingency fee limitation and the noneconomic damages cap have resulted in Luo and Lin's inability to retain an attorney, this does not violate collective plaintiffs' right to petition the government for redress of claims. (*Ibid.*)

      2.    <u>Challenged MICRA Provisions Do Not Constitute an Unconstitutional Taking</u>

Collective plaintiffs allege that the challenged provisions are unconstitutional because they constitute a taking of private property without just compensation, which is prohibited by article I of the California Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. They assert that Luo and Lin have a property right in the noneconomic damages owed to them by the healthcare defendants. However, they concede that the California Supreme Court rejected the same claim in *Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137. *Fein* explained that " '[it] is well established that a plaintiff has no vested property right in a particular measure of damages and that the Legislature possesses broad authority to modify the scope and nature of such damages.' " (*Fein*, at p. 157, italics omitted.) *Fein* held that MICRA's noneconomic damages cap was rationally related to the Legislature's objective of reducing the costs of malpractice insurance and healthcare. (*Id.* at pp. 158–159.)

14

Collective plaintiffs argue that *Fein*'s "analysis is improper," and they cite *Yoshioka v. Superior Court* (1997) 58 Cal.App.4th 972 (*Yoshioka*) in support of their position that the noneconomic damages cap deprives them of "every reasonable method of securing just compensation." Not only are we bound by *Fein*, but *Yoshioka* does not support collective plaintiffs' position. *Yoshioka* rejected a constitutional challenge to the application of a statute prohibiting uninsured motorists and drunk drivers from recovering noneconomic damages in any action arising out of the operation or use of a motor vehicle. (*Yoshioka*, at p. 978.) The court stated that "a state and its people may alter" the "right to recover specific types of damages" and that "[s]uch alteration is only forbidden when at the very least the party is deprived of *every reasonable method of securing just compensation*. This does not encompass instances where the plaintiff would not recover as much as he would have had the former rule continued." (*Id.* at p. 982.) Collective plaintiffs argue that the cap on noneconomic damages deprives plaintiffs of "the entirety of damages," but this is not so. Unlike in *Yoshioka*, where the statute at issue barred all noneconomic damages and was still upheld against constitutional challenges (*id.* at pp. 978, 993), the MICRA cap at issue here allows for noneconomic damages up to $250,000.[8]

### 3. Equal Protection

Collective plaintiffs assert that the challenged statutes deny them equal protection of the laws both facially and as applied. They claim the

---

[8] Collective plaintiffs' opening brief references wrongful death claims involving non-wage earners and newborns, who do not have economic damages. However, as the defendants note, the FAC does not include a wrongful death claim; nor does it involve injury to a newborn. It appears this reference in plaintiffs' opening brief may be related to another similar action filed by CZR in one of the actions the trial court judicially noticed.

15

challenged statutes arbitrarily negatively impact only medical malpractice victims and disproportionally burden the most seriously injured medical malpractice victims. They further complain that the challenged statutes only limit malpractice plaintiffs' litigation expenditures and not defense costs incurred by malpractice defendants and their insurers. Finally, they assert the challenged statutes treat wealthy plaintiffs differently because wealthy plaintiffs are able to pay hourly attorney fees.

The California Supreme Court and several Courts of Appeal have considered and rejected similar claims. (*Fein, supra*, 38 Cal.3d at pp. 162–164 [noneconomic damages cap does not violate equal protection principles because the statutory classifications are rationally related to the legislative purpose]; *Roa, supra*, 37 Cal.3d at pp. 930–933 [contingency fee limits do not violate equal protection because they are rationally related to the Legislature's objective to reduce malpractice costs]; *Chan, supra*, 237 Cal.App.4th at p. 621 [rejects equal protection challenge to noneconomic damages cap]; *Stinnett v. Tam* (2011) 198 Cal.App.4th 1412, 1432 [same].)

Collective plaintiffs attempt to circumvent this settled authority with two arguments. First, they assert that circumstances have changed since MICRA's passage in 1975 and therefore the statute is no longer constitutional. Second, they assert that the challenged statutes must be evaluated under a strict scrutiny analysis because they infringe on plaintiffs' fundamental right to petition the government and due process right to retain counsel, and they "instill the wealth classification . . . ." Neither argument is compelling.

*Chan* rejected the same "changed circumstances" argument. There, the plaintiffs argued that there was no longer a medical malpractice insurance crisis; Proposition 103, under which the California Insurance Commissioner

16

sets medical malpractice rates, stabilized the insurance market; and the impact of inflation significantly decreased the economic significance of the $250,000 noneconomic damages cap. (*Chan, supra*, 237 Cal.App.4th at p. 613.) *Chan* explained that when *Fein* was decided in 1985, the majority disregarded objections made by the dissent that the malpractice insurance crisis was " 'fading into the past' " and that inflation would reduce the value of the $250,000 noneconomic damages cap. (*Id.* at p. 616.) "Thus, the very circumstances that underlie Chan's purported 'changed circumstances' argument were already emergent and rejected when the court decided *Fein*." (*Id.* at p. 617.)

In *Chan*, the record included attorney declarations "claiming that insurance-industry lawyers can far outspend and outstaff cases because their clients pay by the hour and MICRA does not limit the amount of collectable fees"; that MICRA discourages attorneys from taking medical malpractice cases where economic damages are not large; and the costs and legal fees incurred in Chan's case exceeded the total jury award after the MICRA adjustments. (*Chan, supra*, 237 Cal.App.4th at pp. 609–610.) The record also included the declaration of an economist who stated that $250,000 in 2012 dollars equaled only $59,000 in 1975 dollars. (*Id.* at p. 609.) Collective plaintiffs, here, make similar assertions of fact in their FAC which were considered and rejected in *Chan*. (*Id.* at pp. 609–610; see *Stinnett v. Tam, supra*, 198 Cal.App.4th at p. 1432 ["The fact that [plaintiff] might prefer a different statute, indexed for inflation, does not render unconstitutional the statute the Legislature enacted. ' "We are not equipped to decide desirability; and a court cannot eliminate measures which do not happen to suit its tastes if its [*sic*] seeks to maintain a democratic system. The forum for correction of ill-considered legislation is a responsive legislature" ' "].)

17

Collective plaintiffs make a cursory argument that their claims should be analyzed under the strict scrutiny test because of the "wealth classifications inherent in MICRA's caps" combined with the challenged statutes' violation of the right to petition the government and due process right to retain counsel. We disagree. Equal protection claims are evaluated under the rational relationship test when the statutory disparity implicates no suspect class or fundamental right. (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.) As discussed *ante*, the challenged statutes do not infringe on the right to petition the government; nor do they violate due process.[9] Nor is wealth level, by itself, a suspect class that warrants strict scrutiny. (*Kadrmas v. Dickinson Public Schools* (1988) 487 U.S. 450, 458.)

Given that the challenged statutes do not infringe on collective plaintiffs' fundamental rights, their reliance on *Serrano v. Priest* (1976) 18 Cal.3d 728 is misplaced. *Serrano* involved an equal protection challenge to the state public school financing system. (*Id.* at p. 735.) The California Supreme Court specifically did not determine that all government classifications based on wealth are subject to a strict scrutiny analysis under California's equal protection provisions. (*Id.* at p. 766, fn. 45.) Instead, it found that where the classification is based on wealth *and* "clearly affects the fundamental interest of the children . . . in education, . . . this combination of factors warrants strict judicial scrutiny under our state equal protection provisions." (*Ibid.*) Collective plaintiffs do not argue that strict scrutiny should apply solely because the challenged statutes negatively impact them

---

[9] To the extent the plaintiffs are asserting that they have a fundamental right to counsel in civil actions, this is contrary to "the general rule that there 'is no due process right to counsel in civil cases.' " (*Chan, supra*, 237 Cal.App.4th at p. 625.)

based on their income level. Nor do they cite any case authority in support of such a claim.

### 4. Due Process

Collective plaintiffs' due process claims reassert their prior allegations based on changed circumstances, the right to petition the government, and equal protection of the laws. These claims fail for the same reasons. (*Fein, supra*, 38 Cal.3d at pp. 158–159 [noneconomic damages cap does not violate due process because it is rationally related to legitimate state interest in reducing insurance premiums]; *Roa, supra*, 37 Cal.3d at p. 930 [contingency fee limit does not violate due process]; *Chan, supra*, 237 Cal.App.4th at p. 627 ["while MICRA's noneconomic damages cap may well influence an attorney's decision to take or reject a medical malpractice case on contingency, the cap does not violate a due process right to court access"].)

### 5. Right to Jury Trial

The FAC alleges that MICRA's cap on noneconomic damages violates the collective plaintiffs' right to a jury trial. Collective plaintiffs acknowledge in both their FAC and their opening brief that this argument was rejected in *Chan*. However, they assert, without further analysis, their "belie[f] [that] *Chan* was wrongly decided" and that we should review their claim. We agree with our colleagues' thorough analysis of this issue in *Chan* and with their conclusion rejecting the right to jury trial challenge to MICRA's noneconomic damages cap. (*Chan, supra*, 237 Cal.App.4th at p. 629 [finding jury trial right challenge is " 'an indirect attack upon the Legislature's power to place a cap on damages' " and that "our Supreme Court has *repeatedly* held 'the Legislature retains broad control over the measure, as well as the timing, of damages that a defendant is obligated to pay and a plaintiff is entitled to receive' "]; see *Stinnett v. Tam, supra*, 198 Cal.App.4th at p. 1433 [noting

19

multiple cases holding "Legislature possesses broad authority to modify the scope and nature of recoverable damages"]; *Yates v. Pollock* (1987) 194 Cal.App.3d 195, 200 [contention that noneconomic damages cap unconstitutionally infringes on right to jury trial is indirect attack on Legislature's power to place a cap on damages].)

## C.    Leave to Amend

Collective plaintiffs do not argue that the trial court abused its discretion in denying leave to amend a second time.  Thus, they have not established that there is a reasonable probability they could amend their complaint to overcome the legal arguments raised in the demurrer.  (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879–880.)[10]

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

---

[10] The healthcare defendants requested that we take judicial notice of a complaint filed by the law firm plaintiffs on behalf of Luo and Lin against multiple defendants alleging violation of residents rights, elder abuse and neglect, negligence, violation of the Unruh Civil Rights Act, and negligent infliction of emotional distress.  They also request that we take judicial notice of the register of actions indicating the plaintiffs filed a request for dismissal of the complaint.  We find these documents are not necessary to our analysis of the issues presented in the appeal, and we deny the healthcare defendants' request for judicial notice.

_____
Jackson, P. J.

WE CONCUR:


_____
Simons, J.


_____
Chou, J.


A164164/*Luo v. Bonta*